**STARLIGHT INTERNATIONAL INC., Plaintiff,**

v.

**Joseph B. HERLIHY, Jr., et al., Defendant.**

**Civ.A.No. 97–2329–GTV.**

United States District Court, D. Kansas, Kansas City Division.

June 3, 1999.

John C. Aisenbrey, Sean W. Colligan, Stinson, Mag & Fizzell, P.C., Kansas City, MO, Eric Alan Kuwana, Charles E. Talisman, David A. Colodny, Michael T. Wood, Ronald S. Liebman, Patton Boggs, L.L.P., Washington, DC, for plaintiff.

Robert H. Gardner, Mark D. Murphy, R. Mark Nasteff, Murphy & Nasteff, P.A., Overland Park, KS, for defendants.

David J. Dawes, Belgium, KS, pro se.

### MEMORANDUM AND ORDER

RUSHFELT, United States Magistrate Judge.

Before the court is Plaintiff's Motion for Sanctions Against the Miller Group Defen-

dants and Their Counsel By Reason of Bad Faith Discovery Tactics and Failures to Comply with Court Orders (doc. 228). Pursuant to 28 U.S.C. § 1927 and Fed.R.Civ.P. 26(g) and 37(b) and (d), plaintiff seeks an order to impose sanctions against Joseph B. Herlihy, Jr. (Herlihy); The Miller Group, a.k.a. The Miller/21st Century Group (Miller Group); 21st Century Enterprises, Ltd. (21st Century); Alan J. Bruce (Bruce) (all collectively referred to as the Miller Group Defendants); and their counsel. The Miller Group Defendants oppose the motion.

Plaintiff asserts that the Miller Group Defendants and their attorneys have abused the discovery process, failed to comply with court orders directing that discovery be had, made misrepresentations to the court, and vexatiously multiplied the proceedings. It specifically asserts that the Miller Group Defendants have refused to provide information regarding the location and disposition of $3.5 million in dispute and subject of this litigation, inadequately prepared their Fed. R.Civ.P. 30(b)(6) designated representative for deposition, failed to comply with an order to provide information sought in document requests and interrogatories, and made misrepresentations to this court.

The Miller Group Defendants claim that the information concerning the disputed funds is not within their possession, custody, or control. They also claim to have adequately prepared their Fed.R.Civ.P. 30(b)(6) designated representative. They argue they property asserted privilege or work product against questioning by plaintiff. They contend, furthermore, that they have complied with the orders of this court to the extent possible. They deny making misrepresentations to the court. They suggest that neither they nor their attorneys have engaged in sanctionable activities.

The court set out the factual background of this case in a Memorandum and Order dated July 21, 1998, (doc. 187). It need not repeat all of those facts. Some summary, nevertheless, appears in order.

Plaintiff Starlight International, Inc. alleges that the Miller Group Defendants conspired to defraud it. (First Am.Compl., ¶¶ 100–03, doc. 289.) It complains they engaged in fraudulent or negligent misrepresentation; fraudulent omission and concealment; conversion; and securities fraud in violation of the Security and Exchange Act of 1934 and securities law of Kansas. (*Id.* ¶¶ 67–99.) It further alleges in the alternative that they violated the Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. §§ 1961–68. (*Id.* ¶¶ 112–30.) In addition it alleges breach of contract against Miller Group and/or 21st Century. (*Id.* ¶¶ 134–37.) Its complaint alleges acts of conspiracy and other illegal conduct which caused plaintiff to lose more than $3.5 million.

Defendant Herlihy resides in Kansas. He is the sole owner, officer, and employee of defendant 21st Century. That entity entered a joint venture with one of three Malaysian companies owned and operated solely by third-party defendant Ian Miller (Miller)— Universal Collateral Investments Ltd.; Miller International Holdings; or Labaun Syndications, Inc. A Third–Party Complaint filed against Miller indicates that 21st Century and Universal Collateral Investments PLC (UCI) comprise the joint venture. (Miller Group Defendants' Third–Party Compl. Against Ian Miller and Universal Collateral Investments PLC, ¶ 2, doc. 302, hereinafter Third–Party Compl.) Whether the joint venture consists of 21st Century and UCI or 21st Century and one of the other Miller-owned entities has no bearing on the matters now before the court. The resulting joint venture, regardless of its members, is defendant Miller Group, a.k.a. the Miller/21st Century Group.

Third-party defendant Miller is a citizen of the United Kingdom. He resides in Malaysia. (Third–Party Compl., ¶ 13.) The Miller Group Defendants allege breach of contract against his company, UCI. (*Id.* ¶¶ 26–34.) They seek indemnity from him and UCI against any judgment in this case. (*Id.* ¶¶ 35–40.)

Defendant Bruce is an attorney in London, England. He has provided services to defendants Miller Group and 21st Century. At deposition he testified both as representative for those entities and in his individual capacity. He knows defendant Herlihy and third-

party defendant Miller. (The court will refer to Herlihy and Bruce collectively as the individual defendants.)

Despite the allegations of fraud (*see* First Am.Compl. and Compl., doc. 1) and several rulings of the court noting those allegations (*see* Mem. & Orders of June 16, July 21, and Aug. 13 and 20, 1998, docs. 168, 187, 207, and 213), the Miller Group Defendants refuse to recognize any claim against them, except breach of contract. (*See* Resp. to Mot., at 2, doc. 251.) The court has noted that the "characterization of this case as a simple commercial contract dispute is disingenuous." (Mem. & Order of Aug. 4, 1998, at 8, doc. 201.) It has also noted the incongruity between the repeated invocations of the Fifth Amendment privilege against compulsory self-incrimination by the individual defendants and the assertion that this case involves no more than a breach of contract. (*Id.*)

### I. Refusal to Provide Information About the Location and Disposition of Disputed Funds

A major grievance of plaintiff concerns information regarding the location and disposition of $3.5 million at issue. Plaintiff has sought discovery of this information since late 1997. On August 20, 1998, the court ordered 21st Century and Miller Group to properly respond to discovery propounded upon them. It similarly ordered the individual defendants to do so or provide a privilege log in accordance with Fed.R.Civ.P. 26(b)(5) to demonstrate the applicability of the privilege against self-incrimination. The order specifically stated:

> The court deems all objections, other than the aforementioned privilege against self-incrimination, waived. Accordingly, the Miller Group Defendants shall produce all documents in their *possession, custody, or control* which are responsive to the requests for production. They have the requisite control, if they have the legal right to obtain the documents on demand. They shall fully answer the interrogatories in accordance with governing case law that "[k]nowledge of officers and agents is imputed to the corporation itself" for pur-

poses of responding to discovery. If they choose to rely upon Fed.R.Civ.P. 33(d) and produce business records *in lieu* of answering, they shall fully comply with the requirements of that rule.

(Mem. & Order of Aug. 20, 1998, at 7 (citations omitted)).

■ The Miller Group Defendants now contend that third-party defendant Miller has sole possession and control of the requested information and relevant documents. They further state that he has refused to provide them the requested information. As sole owner, officer, and director of a member of the joint-venture with 21st Century, however, Miller has a sufficient nexus with defendants 21st Century, Miller Group, and Herlihy to attribute documents in his possession to be under their joint control. Miller Group is the joint venture between 21st Century and one or more of the three Miller-owned companies. (*See* Dep. of Alan John Bruce of Aug. 19, 1998, at 34 [hereinafter Dep. of Bruce], attached as Ex. 18 to Mem.Supp.Mot. for Sanctions, doc. 229, [hereinafter Mem. Supp.] ) Herlihy, furthermore, is the sole owner of 21st Century.

■ The applicable laws of Kansas treat joint ventures and partnerships the same. *Mid Kan. Fed. Sav. & Loan Ass'n v. Orpheum Theater Co.*, 810 F.Supp. 1184, 1193 (D.Kan.1992) (citing *Modern Air Conditioning, Inc. v. Cinderella Homes, Inc.*, 226 Kan. 70, 596 P.2d 816 (1979)). Kansas law provides that partners have a legal right to obtain partnership information on demand. *See* K.S.A. 56–320 (1997) ("Partners shall render on demand true and full information of all things affecting the partnership to any partner."); *see also*, 1998 Kan. Session Laws Ch. 93 (S.B.9) (repealing K.S.A. 56–320 and enacting the Kansas Uniform Partnership Act, K.S.A. 56a–101 to –1305, wherein 56a–403 provides the legal duty to provide information to other partners). In view of the similar treatment of partnerships and joint ventures under Kansas law, the court finds that members of a joint venture also have a legal right to obtain information of the venture on demand.

■ The Miller Group Defendants do not dispute that Kansas law treats partnerships and joint ventures the same. Rather they argue that the information sought by plaintiff is not property of the joint venture and thus not within their custody or control. Such argument has no merit with respect to answering interrogatories, producing documents, and providing deposition testimony. Knowledge of officers and agents of a joint venture is imputed to the entity for purposes of answering interrogatories. *Cf. Casson Constr. Co. v. Armco Steel Corp.*, 91 F.R.D. 376, 381 (D.Kan.1980) (applying proposition to a corporation); *see also,* Fed.R.Civ.P. 33(a). The same is true with respect to testifying at deposition. *In re Indep. Serv. Org. Antitrust Litig.*, 168 F.R.D. 651, 653 (D.Kan.1996). Under both K.S.A. 56–320 and newly enacted K.S.A. 56a–403, partners have a duty to provide full information of all things affecting the partnership to any partner. It is well-settled that these principles apply to joint ventures.

■ "Courts have universally held that documents are deemed to be within the possession, custody or control if the party has actual possession, custody or control *or has the legal right to obtain the documents on demand.*" *Wardrip v. Hart*, 934 F.Supp. 1282, 1286 (D.Kan.1996) (emphasis added); *see also, National Union Fire Ins. Co. v. Midland Bancor, Inc.*, 159 F.R.D. 562, 566 (D.Kan.1994). The attempts to distinguish these cases by the Miller Group Defendants are unpersuasive. The cases accurately state the law as it applies in this discovery dispute. Defendant 21st Century, as a joint venturer with Miller, and defendant Herlihy, as sole owner of 21st Century, have a legal right to obtain the requested information from each other upon demand. As the joint venture itself, defendant Miller Group likewise has a legal right to obtain the requested information from its own constituent members.

Defendants 21st Century, Miller Group, and Herlihy have violated the Memorandum and Order of August 20, 1998. The court directed them to produce all documents in their control which were responsive to Plaintiff's First Request for Production of Documents. Request 5 of the First Request specifically seeks "[a]ll documents which identify, discuss or relate to the location of any part of the $3.5 million at issue in this action." (Pl.'s First Request for Prod., attached as Ex. 4 to Mem.Supp. of Pl.'s Mot. Compel, doc. 123.) At a minimum, the Miller Group Defendants have disregarded the Order of August 20, by not producing all documents responsive to Request 5. The court has rejected their suggestion that responsive documents are outside their control. They are within sole care and custody of Miller and one or more of his companies. For the purpose of discovery in this case Miller individually and doing business as three solely-owned entities constitutes one person. Fed.R.Civ.P. 37(b)(2) permits sanctions against parties failing to comply with an order of the court. It provides that the court "may make such orders in regard to the failure as are just."

## II. Failure to Comply With Fed.R.Civ.P. 30(b)(6)

■ On August 13, 1998, the court sustained in part and overruled in part a motion of the Miller Group Defendants for protective order. It ruled that plaintiff may not require 21st Century, Miller Group, or Bruce to be deposed in Kansas City, Missouri. It otherwise overruled the motion. It found all proposed areas of inquiry relevant for the scheduled Rule 30(b)(6) depositions. It noted that confidentiality does not exclude information from discovery. It also found a blanket claim of privilege insufficient to limit the scope of the depositions. It declined to speculate that the Miller Group Defendants would not adequately prepare their Rule 30(b)(6) representative. (Mem. & Order of Aug. 13, 1998.)

Prior to entry of the order the parties had agreed that the depositions proceed in London, as desired by the Miller Group Defendants. On July 28, 1998, plaintiff served revised Fed.R.Civ.P. 30(b)(6) notices of deposition upon 21st Century and Miller Group. They included the topics identified in the motion for protective order and an additional one. On August 17, 1998, the court conducted a status conference. It advised the parties that plaintiff would be permitted to in-

quire about the additional topic, as well as those allowed by the Memorandum and Order of August 13, 1998. Defendants expressed no concern about preparing their designated representative for deposition scheduled two days later. At the deposition of August 19, 1998, the following colloquy, nevertheless, took place:

Q (by Mr. Talisman): Are you prepared to testify, sir, on behalf of 21st Century with respect to each of the topics listed in [the notice of deposition for 21st Century]?

A (by Bruce): Yes.

MR. MURPHY: I would like to state for the record's sake too, on Monday evening we received by fax from your office, Mr. Talisman, the order of the court that sustained and granted and denied in part the motion to quash or motion for protective order with regard to these deposition notices. The court's order directed that testimony be given as to all areas provided under these deposition notices. Due to the fact that we received that just a little over a day ago, due to the fact that many of the files particularly relating to other transactions are not related to this transaction at Bar are not present in London, Mr. Bruce does not have those documents, has not been prepared on those documents and we have not obviously produced those documents. It is our intention, pursuant to the court order, to produce those documents as ordered by the court, which is, as I understand, within 15 days from the date the order was issued and to make Mr. Bruce available for further deposition in October when we're back on the next setting for depositions with regard to that information.

MR. TALISMAN: All right, that's noted and rather than getting into any issues we might have with that now, we can discuss it later if it is appropriate to discuss it.

MR. MURPHY: Certainly. Subject to that, Mr. Bruce is ready to testify.

(Dep. of Bruce, at 5–6.)

After the above discussion plaintiff deposed Bruce, as Rule 30(b)(6) representative for 21st Century and Miller Group. He testified that he had made no effort to contact Herlihy or Miller, each the sole owner, officer, and director of their respective entities forming the Miller Group joint venture. Bruce did not review his own files. He reviewed only documents previously produced in this litigation. Defense counsel apparently sent them to him four or five days before the deposition. Bruce testified that his entire preparation consisted of speaking with counsel and reviewing previously produced documents. (Dep. of Bruce, at 6–7 and 161.) Counsel provided no information on numerous topics identified in the notices of deposition.

Throughout his deposition Bruce claimed ignorance about matters for inquiry identified in the deposition notices. Topic 8 of the notice notified defendants and Bruce that plaintiff would inquire into the accounts and location of the $3.5 million at issue in this litigation. The following colloquy illustrates the lack of knowledge of Bruce:

Q. ... What do you know about the present location of the $3.5 million that is at issue in this litigation?

A. I know nothing.

. . . . .

Q. ... and what knowledge do you have as to what disposition was made of this money once it went to the Public Bank in Labaun?

A. None.

Q. So you have not discussed that at all with Mr. Herlihy; is that correct?

A. We have had discussion. My understanding is that the money was used in creating a syndicated loan and maintaining it for the purpose of complying with the terms of the Verkruisen contract.

Q. How were the funds used in creating the syndicated loan?

A. I don't know.

Q. To whom were the funds paid in the course of creating this syndicated loan?

A. I don't know.

Q. To what accounts were the funds transferred once they reached the Public Bank in Labaun?

A. I don't know.

Q. Do you know anything about where the funds went after they reached the account ... in Public Bank, Labaun?

A. No.

Q. Do you have any knowledge as to whether any of the funds that were sent into that account, the Public Bank in Labaun, remain in that account today?

A. I don't know.

(Dep. of Bruce, at 9–11.)

Topic 6 of the notice of deposition reveals that plaintiff would inquire about the entities which comprise the Miller Group Defendants. Bruce exhibited some lack of knowledge about this topic as well. He could not identify which Miller-owned entity was active in the joint venture for any particular transaction. (*Id.* at 20.) He could not approximate the number of transactions he handled for the Miller Group, as he "was only made aware of the requirement to make this evidence available" the day before. (*Id.* at 24.) He did not know whether 21st Century ever had offices in any location other than Kansas. (*Id.* at 56–57.) He did not know whether anyone other than Miller worked at offices of the Miller-owned companies in London. (*Id.* at 63.)

The parties engaged in procedural arguments before the second day of Bruce's deposition. (*See* Procedural Argument During Dep. of Alan John Bruce of August 20, 1998, attached as Ex. 27 to Mem.Supp.) Bruce revealed that, while testifying the day before, he had lost sight of his duty to speak as representative for 21st Century and Miller Group. He apologized for the oversight. (*Id.* at 9.) Defense counsel indicated that "Mr. Bruce's testimony was relatively complete to the Miller Group's knowledge" with respect to the location of the $3.5 million. Counsel indicated that the funds "did go to the UCI account and from that point on we know nothing further." (*Id.* at 13.) The parties agreed to obtain an expedited transcript of the first day's testimony and thereby try to remedy the oversight of Bruce at some later date. (*Id.* at 12.) This procedural discussion on the record reveals that, in many respects, Bruce gave incorrect and incomplete testimony on the first day of testimony.

Bruce was also not adequately prepared for the second day of deposition. He did not know whether 21st Century held annual meetings. He did not know whether it kept books and records separate from the records of its shareholders. (Dep. of Alan John Bruce of Aug. 20, 1998, at 12, attached as Ex. 19 to Mem.Supp.) He did not know whether 21st Century had bank accounts in the Bahamas. (*Id.* at 14–15.)

As the designated Fed.R.Civ.P. 30(b)(6) representative for 21st Century and the Miller Group, Bruce should have been prepared to provide the information sought. Either the Miller Group, as the joint venture, or 21st Century as one member of the venture, if not both, should have knowledge of the aforementioned matters about which plaintiff inquired. They appear relevant. They involve the entities Bruce was designated to represent.

On August 22, 1998, Bruce attempted to amend and clarify many answers he gave on the first day of deposition. (*See* Continuing Dep. of Alan John Bruce of Aug. 22, 1998, attached as Ex. 25 to Mem.Supp.) His amendments and clarifications remedy some of his inadequacies on the first day. They do not, however, completely cure them. Although he testified that $2.975 million of the $3.5 million at issue was transferred into an account of Universal Collateral Investments PLC, for example, he disclaimed any specific knowledge of the disposition of the funds thereafter. (*Id.* at 6–8 and 20–21.) He also supplemented his answer to add that the information has been requested from Miller, who has declined to provide it. (*Id.* at 8 and 21.) This supplementation does not remedy his non-responsiveness. As Rule 30(b)(6) representative for the joint venture, the knowledge of Miller, as sole owner of one member of the venture, is imputed to Bruce. Defense counsel, furthermore, instructed

Bruce not to answer an inquiry about how much time Bruce and counsel spent discussing his amendments and clarifications. (*Id.* at 23–24.) Such instruction appears improper.

■■■■ Defendants 21st Century and Miller Group have not adequately explained their failure to properly prepare Bruce for deposition. Rule 30(b)(6) provides that the person designated to testify on behalf of an entity "shall testify as to matters known or reasonably available to the organization." Foremost among the purposes of the Rule is to "curb the 'bandying' by which officers or managing agents of a corporation are deposed in turn but each disclaims knowledge of facts that are clearly known to persons in the organization and thereby to it." *Rainey v. American Forest & Paper Ass'n*, 26 F.Supp.2d 82, 95 (D.D.C.1998) (quoting Fed. R.Civ.P. 30(b)(6) advisory committee notes (1970 amend.)) "For a Rule 30(b)(6) deposition to operate effectively, the deposing party must designate the areas of inquiry with reasonable particularity, and the corporation must designate and adequately prepare witnesses to address these matters." *United States v. Taylor*, 166 F.R.D. 356, 360 (M.D.N.C.), *aff'd*, 166 F.R.D. 367 (1996). "If the rule is to promote effective discovery regarding corporations the spokesperson must be informed." *Dravo Corp. v. Liberty Mut. Ins. Co.*, 164 F.R.D. 70, 75 (D.Neb.1995) (quoting *Protective Nat'l Ins. Co. v. Commonwealth Ins. Co.*, 137 F.R.D. 267, 278 (D.Neb.1989)).

> A notice of deposition made pursuant to Rule 30(b)(6) requires the corporation to produce one or more officers to testify with respect to matters set out in the deposition notice or subpoena. A party need only designate, with reasonable particularity, the topics for examination. The corporation, then must not only produce such number of persons as will satisfy the request, but more importantly, prepare them so that they may give complete, knowledgeable and binding answers on behalf of the corporation.

*Audiotext Communications Network, Inc. v. U.S. Telecom, Inc.*, No. Civ.A. 94–2395–GTV, 1995 WL 625962, at *13 (D.Kan. Oct. 5, 1995) (quoting *Marker v. Union Fidelity Life Ins. Co.*, 125 F.R.D. 121, 126 (M.D.N.C.1989)). Although the above cases speak in terms of corporations, the same principles apply to joint ventures and partnerships. *See* Fed. R.Civ.P. 30(b)(6).

■■■■ Rule 30(b)(6) implicitly requires the designated representative

> to review all matters known or reasonably available to it in preparation for the Rule 30(b)(6) deposition. This interpretation is necessary in order to make the deposition a meaningful one and to prevent the sandbagging of an opponent by conducting a half-hearted inquiry before the deposition but a thorough and vigorous one before the trial. This would totally defeat the purpose of the discovery process. The Court understands that preparing for a Rule 30(b)(6) deposition can be burdensome. However, this is merely the result of the concomitant obligation from the privilege of being able to use the corporate [or other organizational] form in order to conduct business.
>
> [A party] does not fulfill its obligations at the Rule 30(b)(6) deposition by stating it has no knowledge or position with respect to a set of facts or area of inquiry within its knowledge or reasonably available....

*United States v. Taylor*, 166 F.R.D. 356, 362 (M.D.N.C.), *aff'd*, 166 F.R.D. 367 (1996). The United States District Court for the Southern District of Florida has succinctly set forth applicable principles with regard to depositions under Fed.R.Civ.P. 30(b)(6) as follows:

> 1) Rule 30(b)(6) obligates the responding corporation to provide a witness who can answer questions regarding the subject matter listed in the notice.
>
> 2) If the designated deponent cannot answer those questions, then the corporation has failed to comply with its Rule 30(b)(6) obligations and may be subject to sanctions, etc. The corporation has an affirmative duty to produce a representative who can answer questions that are both within the scope of the matters described in the notice and are "known or reasonably available" to the corpora-

tion. Rule 30(b)(6) delineates this affirmative duty.

3) If the examining party asks questions outside the scope of the matters described in the notice, the general deposition rules govern (i.e. Fed.R.Civ. P.26(b)(1)), so that relevant questions may be asked and no special protection is conferred on a deponent by virtue of the fact that the deposition was noticed under 30(b)(6).

4) However, if the deponent does not know the answer to questions outside the scope of the matters described in the notice, then that is the examining party's problem.

*King v. Pratt & Whitney,* 161 F.R.D. 475, 476 (S.D.Fla.1995). These principles apply to partnerships and joint ventures, as well as corporations.

Bruce's deposition reflects inadequate preparation and knowledge as a witness with respect to Topics 6 and 8 of the areas of inquiry set forth in the deposition notice. He failed to make necessary inquiries about relevant topics. He also made no effort to review his own files or those of 21st Century or Miller Group other than those provided to him by counsel. The Miller Group Defendants note that the ruling on the motion for protective order was entered only a few days before the deposition. The timing of that ruling, however, does not justify the substantial lack of preparation exhibited by Bruce. Had defendants been concerned about the time to prepare Bruce, they could have raised the issue at the status conference of August 17, 1998. They did not do so. Instead they allowed plaintiff to travel to London, England, to depose a poorly prepared party representative. The witness remained substantially unprepared, furthermore, when plaintiff deposed him for a second time in October 1998. (*See* Continuing Dep. of Alan John Bruce, attached as Ex. 5 to Reply Mem. Supp., doc. 266.)

Bruce testified in October 1998, that his previous answers on Topic 6 "were to the extent of [his] knowledge." He testified no further about Topic 6. (*Id.* at 25.) In addition he had obtained no further information regarding Topic 8, prior to testifying in Octo-

ber. He again testified that his earlier testimony "was the extent of [his] knowledge." (*Id.* at 28.) He also exhibited a lack of knowledge regarding Topic 13, *i.e.* efforts to search for records responsive to requests for discovery. (*Id.* at 34–39.)

 Fed.R.Civ.P. 37(d) permits the imposition of sanctions when a party or person designated under Rule 30(b)(6) fails "to appear before the officer who is to take the deposition, after being served with proper notice." "Producing an unprepared witness is tantamount to a failure to appear at a deposition." *United States v. Taylor,* 166 F.R.D. 356, 363 (M.D.N.C.), *aff'd,* 166 F.R.D. 367 (1996). Corporations, partnerships, and joint ventures have a duty to make a conscientious, good-faith effort to designate knowledgeable persons for Rule 30(b)(6) depositions and to prepare them to fully and unevasively answer questions about the designated subject matter. *Cf. Dravo Corp. v. Liberty Mut. Ins. Co.,* 164 F.R.D. 70, 75 (D.Neb.1995) (corporations). If the designated persons "do not possess personal knowledge of the matters set out in the deposition notice, the [entity] is obligated to prepare the designees so that they may give knowledgeable and binding answers for the [organization]." *Taylor,* 166 F.R.D. at 361. "[I]f it becomes obvious during the course of a deposition that the designee is deficient, the [organization] is obligated to provide a substitute." *Dravo,* 164 F.R.D. at 75.

 Defendants 21st Century and Miller Group have engaged in sanctionable misconduct by failing to adequately prepare their representative for deposition. The court also finds that Bruce, as a party to this action, engaged in sanctionable misconduct by not preparing himself adequately for deposition. The court may find lack of preparation at a deposition to be a failure to appear. Fed. R.Civ.P. 37(d) provides the court with discretion to "make such orders in regard to the failure [to appear] as are just." Such discretion may include sanctioning an unprepared Rule 30(b)(6) representative, as well as the entity he represents, when he himself is a party to the litigation.

■ It appears that defendants 21st Century, Miller Group, and Bruce made no good faith effort to adequately prepare him to testify in accordance with Rule 30(b)(6). Plaintiff has incurred prejudice in the form of expense and wasted time. The lack of adequate preparation has disrupted the proceedings. It has prevented plaintiff from obtaining adequate answers to its inquiries. It necessitated a second trip to London to complete the deposition. Even then, Bruce was not adequately prepared to further expound upon Topics 6, 8, and 13. "[I]nadequate preparation of a Rule 30(b)(6) designee can be sanctioned based on the lack of good faith, prejudice to the opposing side, and disruption of the proceedings." *Taylor,* 166 F.R.D. at 363. The mere fact that a party later has opportunity to again depose the representative does not cure the initial inadequacy of the witness.

### III. Failure to Adequately Answer Interrogatories

By Memorandum and Order of August 20, 1998, (doc. 213), the court directed defendants 21st Century and Miller Group to provide full supplemental answers to interrogatories. It directed defendants Herlihy and Bruce to do the same or provide a privilege log. Plaintiff takes issue with the supplemental answers to Interrogatory 1 of its First and Third Sets and 1 through 4 of its Second Set of Interrogatories. The individual defendants object to each of these interrogatories and assert a Fifth Amendment privilege against self-incrimination, except as to Interrogatory 3 of the Second Set. To each interrogatory defendants 21st Century and Miller Group answered:

> Pursuant to Fed.R.Civ.P. 33(d), all or a portion of the response to this interrogatory can be derived from documents already produced by the Miller Group Defendants. In further answer, the Miller Group Defendants state that this interrogatory has been answered to the fullest extent of their knowledge and belief during the deposition testimony given on August 19, 20 and 22, 1998 by Alan J. Bruce as the designated representative for 21st Century Enterprises Ltd., and the Miller Group, a/k/a the Miller/21st Century Group.

The individual defendants joined in this answer to Interrogatory 3 of the Second Set.

■ These answers do not suffice. They do not comply with the Order of August 20, 1998. Citing *Pulsecard, Inc. v. Discover Card Servs., Inc.,* 168 F.R.D. 295, 304–05 (D.Kan.1996), the court cautioned the Miller Group Defendants that, "[i]f they choose to rely upon Fed.R.Civ.P. 33(d) and produce business records *in lieu* of answering, they shall fully comply with the requirements of that rule." (Mem. & Order of Aug. 20, 1998, at 7.) "Under the guise of Fed.R.Civ.P. 33(d) defendants may not simply refer generically to past or future production of documents. They must identify in their answers to the interrogatories specifically which documents contain the answer. Otherwise they must completely answer the interrogatories without referring to the documents." *Pulsecard,* 168 F.R.D. at 305. Their supplemental responses improperly invoke Fed.R.Civ.P. 33(d). They have not complied with the clear direction of *Pulsecard* or Rule 33(d).

■ The answers also refer to deposition testimony. A party may not properly answer an interrogatory by referring generically to testimony given upon deposition. "Incorporation by reference to a deposition is not a responsive answer." *Hoffman v. United Telecommunications, Inc.,* 117 F.R.D. 436, 440 (D.Kan.1987). A party may, nevertheless, object that an interrogatory seeking information already discovered in depositions is duplicative. *See Pulsecard,* 168 F.R.D. at 305–06. That objection is unavailable to the Miller Group Defendants, however, as the court has already deemed all objections to the interrogatories waived, except for the objection of privilege possessed by the individual defendants against self-incrimination. The court, furthermore, does not construe the responses as asserting an objection premised on duplication.

■ Were the objection available and raised in response to the interrogatories, the court would nevertheless overrule it. *Pulsecard* provides thorough and appropriate guidance in that regard:

As an alternative to answering interrogatories defendants sometimes direct plaintiff to deposition testimony given in this case. Deposition testimony does not necessarily equate with answering interrogatories. Parties may seek information through a variety of discovery vehicles. Fed.R.Civ.P. 26(a)(5) provides:

> Parties may obtain discovery by one or more of the following methods: depositions upon oral examination or written questions; written interrogatories; production of documents or things or permission to enter upon land or other property under Rule 34 or 45(a)(1)(C), for inspection and other purposes; physical and mental examinations; and requests for admission.

"[T]he various methods of discovery as provided for in the Rules are clearly intended to be cumulative, as opposed to alternative or mutually exclusive." *Richlin v. Sigma Design W., Ltd.*, 88 F.R.D. 634, 637 (E.D.Ca.1980). "Unless the court upon motion, for the convenience of parties and witnesses and in the interests of justice, orders otherwise, [moreover,] methods of discovery may be used in any sequence." Fed.R.Civ.P. 26(d). That a particular deponent may furnish some information that will answer a particular interrogatory, moreover, by no means assures that the information as furnished constitutes a complete answer. *Sendi v. Prudential–Bache Sec.*, 100 F.R.D. 21, 23 (D.D.C.1983). When complete "answers are contained in prior depositions, [however,] then a motion to compel answers to subsequent interrogatories seeking to elicit the same information should be denied as burdensome, vexatious, oppressive and totally without justification." *Id.* That litigants may engage in successive forms of discovery "is not a license to engage in 'repetitious, redundant and tautological inquiries.'" *Richlin*, 88 F.R.D. at 640.

> Although it has been held that Rule 33 provides that the deposition procedure and procedure upon written interrogatories may be successfully employed in a proper case to require an adverse party to disgorge all relevant facts within his knowledge, the devices of using the two procedures successively should be carefully scrutinized by the Court. Such use of the two procedures may too easily become an instrument for oppression. When a party has submitted to the taking of his deposition at the request of his opponent and thereafter he is served with written interrogatories by the same opponent, to the extent that the interrogatories make inquiry into the same particulars covered in the prior deposition, the use of interrogatories is an abuse of discovery procedure and is oppressive within the meaning of Rule 30(d).

*DiSantis v. Smith of Philadelphia*, No. Civ.A. 87–0515, 1987 WL 28357, at *2 (E.D.Pa. Dec. 18, 1987) (citation omitted).

Defendants must make a showing "sufficiently particularized to advise the Court to what extent the interrogatories propounded to [them] are a duplication of matters previously covered in the taking of [their] deposition[s]." *Id.* at *3. To support an objection based on duplication one must demonstrate that the deponent(s) completely answered the interrogatories. 168 F.R.D. at 305–06.

The Miller Group Defendants have not adequately shown that the interrogatories at issue duplicate matters previously covered in deposition. They pinpoint no deposition testimony from which the court could find that the deponent gave sufficient answers. The mere fact of a deposition does not justify an objection that the interrogatories are duplicative. *Audiotext Communications Network, Inc. v. U.S. Telecom, Inc.*, No. Civ.A. 94–2395–GTV, 1995 WL 625953, at *5 (D.Kan. Oct. 5, 1995).

 The assertion of the 5th Amendment privilege against self-incrimination by the individual defendants also appears improper. The court directed them to supplement their answers to the interrogatories "or provide a privilege log in accordance with Fed.R.Civ.P. 26(b)(5) to demonstrate the applicability of the privilege against self-incrimination." (Mem. & Order of Aug. 20, 1998, at 8.) The information before the court suggests they reasserted their objection, but provided no

privilege log. Plaintiff specifically contends that all Miller Group Defendants have failed to comply with the Memorandum and Order of August 20. No one indicates that Herlihy or Bruce provided the necessary discovery or privilege log. In view of the contention that the individual defendants have failed to comply with the order, they have the burden to provide any discovery or the requisite log. They have not done so.

The Miller Group Defendants have thus violated the Memorandum and Order of August 20, 1998. The court directed them to provide full supplemental answers to the interrogatories. Defendants Herlihy and Bruce could alternatively provide a privilege log in accordance with Fed.R.Civ.P. 26(b)(5). The supplemental answers provided by defendants do not suffice. In providing the inadequate supplementation, defendants ignore relevant authority cited in the order of the court. The individual defendants, furthermore, present nothing to indicate they fulfilled their alternative obligation to produce a privilege log. Fed.R.Civ.P. 37(b)(2) provides for sanctions against parties failing to comply with an order of the court.

## IV. Failure to Appropriately Respond to Requests for Production

█ The Memorandum and Order of August 20, 1998, also directed the Miller Group Defendants to produce all documents responsive to Plaintiff's First Requests for Production of Documents and all documents previously withheld on grounds of privilege. Plaintiff takes issue with the supplemental response to six requests for production. The Miller Group Defendants supplement their responses to Requests 1, 2, 5, 10, 11, and 12, with a single statement—"No additional documents to produce." (Second Supplemental Resp. of the Miller Group Defs. to Pl.'s First Req. for Prod. of Docs., attached as Ex. 15 to Mem.Supp.) Plaintiff asked defendants to clarify whether this statement means that they have no responsive documents or instead are refusing to produce documents on some unidentified basis. Having received no clarification, it raised the issue in the present motion. In response the Miller Group Defendants maintain that "the phrase means what it says—THERE ARE NO ADDITIONAL DOCUMENTS TO PRODUCE!!!"

In some circumstances the supplemental responses might adequately inform the party seeking discovery that no additional documents exist. In this case, however, the supplementation does create ambiguity and uncertainty. The response does not constitute a simple, declaratory sentence. The reader must infer something to completely understand the answer. Does it mean that there are no additional documents within possession of defendants? Or does it mean that there are no additional documents to produce, because the Miller Group Defendants cannot obtain them from Mr. Miller? Or does it simply mean, as defendants now emphatically state, that "there are no additional documents to produce." Defendants could have added the words "there are" to their supplemental answer and perhaps have precluded the controversy. More clearly they could have simply said, "There are no additional documents."

The Miller Group Defendants begin their original responses with a set of objections purportedly applicable to all requests. They further specifically object to Requests 1, 2, 5, 11, and 12 on numerous grounds. In response to Requests 1 and 2 they state, nevertheless, that they have already produced responsive documents in their initial disclosures and that production of others would be redundant. In response to Request 5 they also state that, subject to and without waiving their objections, they have produced "those documents in their possession which identify, discuss or relate to the transfer of the funds in this matter." In response to Request 10 they state that they have produced "all documents in their possession which are non-privileged or non-protected which contain evidence of communications between members of the Miller Group Defendants and the other defendants in this action pertinent to this action." They provide no response to Requests 11 and 12, other than asserting numerous objections. The court has already held that defendants have waived their objections, including privilege.

In view of the initial responses and objections, as well as the ruling of the court, defendants should have supplemented their responses clearly, leaving no ambiguity. The initial responses to Requests 1 and 2 both indicate other responsive documents which had not been produced. Requests 5 and 10 respond that the Miller Group Defendants have produced all documents *in their possession.* Possession alone, however, refers to only a part of the duty to produce. Parties responding to requests propounded pursuant to Fed.R.Civ.P. 34 have a duty to produce all responsive documents in their possession, custody, or control. The initial responses to Requests 11 and 12 neither suggest the existence nor non-existence of responsive documents. They consist only of objections. The Miller Group Defendants now imply that no responsive documents exist. Their supplemental responses, however, remain ambiguous. For all of these reasons, the Miller Group Defendants shall provide clearer supplemental responses to Requests 1, 2, 5, 10, 11, and 12.

The clarification sought by plaintiff also appears reasonable in view of the lack of forthrightness by the Miller Group Defendants. Plaintiff reasonably and appropriately sought clarification of the supplemental responses. Defendants did not respond. As plaintiff points out, "there is no reason why the Miller Group Defendants cannot give a straight answer." The court finds the Miller Group Defendants have not complied with the Memorandum and Order of August 20, 1998. Their supplemental responses are insufficient in view of the circumstances of this case. Defendants and their counsel could have clarified their stance on these requests and perhaps alleviated the need to address the matter in this motion for sanctions. Fed. R.Civ.P. 37(b)(2) provides for sanctions for the failure to comply with the Memorandum and Order of August 20, 1998.

## V. Misrepresentations and Other Improprieties of Counsel

Plaintiff also contends that the Miller Group Defendants and/or defense counsel have made affirmative misrepresentations to the court. It further contends defense coun-sel has improperly directed a deponent to not answer questions based upon invalid assertions of privilege. The Miller Group Defendants and their counsel deny the accusations.

Plaintiff challenges the prior assertions by defendants and their counsel that London, England, was or is the principal place of business of the defendant 21st Century. The court entered a protective order. It prohibited plaintiff from deposing 21st Century in Kansas. It relied upon representations that that defendant principally conducts its business in London. The deposition of Bruce reveals, however, that Herlihy operated 21st Century in Kansas. It had no offices or principal place of business in London. Counsel for 21st Century has alleged Overland Park, Kansas as its principal place of business, furthermore, in a case captioned, *Miller Group v. Goedert,* 97–2338–GTV. (*See* Compl. filed in *Goedert,* attached as Ex. 21 to Mem.Supp.) Defendants attempt to explain these discrepancies by viewing the principal place of business as something which shifts from transaction to transaction. They state:

> Plaintiff overlooks that the *Goedert* case arose out of 21st Century's business in a separate and distinct transaction in which its principal place of business at that time and for that transaction was Kansas. This was not the case in the instant matter. Shortly following the Goedert transaction, 21st Century began conducting the bulk of its business by and through Mr. Bruce in London as a joint venturer in the Miller Group. Applying the two tests generally utilized to determine a corporation's principal place of business, being the "nerve center" test and the "total activity" test *either Kansas or London could reasonably be deemed as 21st Century's principal place of business.*

(Resp. to Mot. at 17, doc. 251.) (Underscoring added.)

Defendants cite no legal principle which supports determining the principal place of business of a party on a transaction by transaction basis. The court otherwise knows of none. The Tenth Circuit Court of Appeals has adopted the total activity test for determining the principal place of business for purposes of diversity jurisdiction. *Amoco*

*Rocmount Co. v. Anschutz Corp.*, 7 F.3d 909, 915 & n. 2 (10th Cir.1993). The Miller Group Defendants purport to apply the test for diversity jurisdiction.

■■■■ The total activity test seems the appropriate starting point for determining the proper location for Fed.R.Civ.P. 30(b)(6) depositions. The test does not interfere with or encroach upon the broad discretion of the court to establish the place of deposition. If justice requires a Rule 30(b)(6) deposition to be taken at some location other than the principal place of business of the party to be deposed, the court may so order. *Moore v. Pyrotech Corp.*, 137 F.R.D. 356, 357 (D.Kan. 1991).

> Although there is an initial presumption that a defendant should be examined at his residence or the principal place of business, a number of factors serve to dissipate the presumption and may persuade the Court to require the deposition to be conducted in the forum district or some other place. Ultimately the court must consider each case on its own facts and the equities of the particular situation.

*Turner v. Prudential Ins. Co. of Am.*, 119 F.R.D. 381, 383 (M.D.N.C.1988) (citations omitted).

■■■ Under the "total activity" test the court "considers a variety of factors, such as the location of the corporation's nerve center, administrative offices, production facilities, employees, etc., and it balances these factors in light of the facts of each case." *Amoco Rocmount Co.*, 7 F.3d at 915 (quoting *White v. Halstead Indus.*, 750 F.Supp. 395, 398 (E.D.Ark.1990)). The Miller Group Defendants merely claim the principal place of business of 21st Century shifted from Overland Park, Kansas to London shortly after the *Goedert* transaction. That transaction occurred in March and April 1994. (*See* Compl. filed in *Goedert*, ¶¶ 7–9.) The transactions here at issue occurred later in 1994 and 1995. (First Am.Compl. ¶¶ 17–66.) Defendants suggest that, for these later transactions, the principal place of business of 21st Century was London.

The Miller Group Defendants proffer no sufficient explanation, however, for why 21st Century asserts in the *Goedert* Complaint of July 10, 1997, that its principal place of business is Overland Park, Kansas. In the absence of evidence to the contrary, that assertion is sufficient to place the principal place of business in Overland Park, Kansas for purposes of locating a deposition of 21st Century. No one suggests a shift of the principal place of business of 21st Century between the filing of the *Goedert* action and its deposition in this case.

■■■■ The burden to show the principal place of business for purposes of locating a deposition rests with the party seeking protection to re-locate the deposition. "The party seeking a protective order has the burden to show good cause for it." *Wilson v. Olathe Bank*, 184 F.R.D. 395, 397 (D.Kan.1999). To alter the chosen situs for a Rule 30(b)(6) deposition, the party seeking protection should demonstrate its principal place of business to be different from the location designated by the notice. The court relied upon representations of the Miller Group Defendants or their counsel for its order that the deposition not proceed in Overland Park, Kansas, over their objection. The Court must now wonder at their responsive concession, quoted above, that " . . . either Kansas or London could reasonably be deemed as 21st Century's principal place of business." If that be so, they had no cause for a protective order to shift the deposition from Kansas to London. Viewing all the evidence now before it, the court finds that the Miller Group Defendants have failed to carry their burden to show the principal place of business of 21st Century is not Overland Park, Kansas.

The balance of known factors in this case, furthermore, favor finding the principal place of business of 21st Century to be in Kansas at all relevant times. Herlihy is its sole owner, officer, and employee. He resides in Kansas. The only office of 21st Century exists in Kansas. Herlihy sent thirty-nine letters from Kansas regarding the transactions here in dispute. He exchanged a series of faxes from Kansas in an effort to contract with the Verkruisen defendants. Bruce, agent for 21st Century in the joint venture, transacted business from London in 1994 and

1995. He issued only sixteen letters from London regarding the transactions. It seems that most of the services of Bruce occurred, however, for 21st Century as a joint venture in the Miller Group. The principal place of business of the joint venture is not at issue. Considering all of the known factors, the court finds that the principal place of business of 21st Century at all times relevant to this action is Kansas. The court has found nothing to indicate otherwise, except for unsupported representations of the Miller Group Defendants, which are controverted by the Complaint filed in *Goedert.*

It seems that someone has erred or made affirmative misrepresentations about the principal place of business of 21st Century. There is no clear evidence to suggest defense counsel made intentional misrepresentations about the principal place of business of 21st Century to the court. The court will not find intentional misrepresentation upon a speculative possibility. It nevertheless finds no good faith basis for asserting that the principal place of business for 21st Century in this action is London. The court finds no support for the suggestion that it determine the principal place of business on a transaction by transaction basis.

Plaintiff also contends that defense counsel misrepresented a lack of information about the location of Ray Metcalfe, a former law partner of defendant Bruce. In response to an interrogatory the Miller Group Defendants claimed they lacked knowledge of his whereabouts. They again asserted such lack of knowledge in opposing a motion to compel an answer to that interrogatory. Bruce testified upon deposition, however, that he has known the location of Metcalfe since the commencement of this litigation. He further testified that he had given the information to defense counsel when first asked for it—the day before his deposition. In response to the motion, defense counsel indicates that the testimony of Bruce is false. They characterize the testimony as an "oversight."

Everyone apparently agrees that Bruce verified the answers to the interrogatories as being correct. It is certain, therefore, that either the verification or the testimony is incorrect. Defense counsel suggest that the

court cannot attribute wrongdoing to them. There are simply too many unknowns to attribute the wrongdoing to any particular individual. Regardless of who should shoulder the blame, someone has either falsely answered an interrogatory or falsely testified.

Plaintiff also challenges assertions of privilege by defense counsel during the deposition of Bruce and their instructions for him not to answer. Plaintiff inquired about discussions between Bruce and Herlihy, which occurred outside the presence of counsel and without direction by an attorney. Defense counsel objected on grounds of attorney-client privilege and work product. In response to the motion he concedes that the attorney-client privilege does not shield the discussions from discovery. He maintains, nevertheless, that the work-product doctrine protects them. Citing Fed.R.Civ.P. 26(b)(3) and (5), he states: "Clearly, trial preparation, after the onset of actual litigation, falls within the causation and reasonableness standards attributable to the area of trial preparation."

The work-product doctrine, as set forth in Fed.R.Civ.P. 26(b)(3), does not prevent inquiry into discussions between the individual defendants. "The work-product doctrine ... protects only documents and tangible items." *ERA Franchise Sys., Inc. v. Northern Ins. Co.,* 183 F.R.D. 276, 280 (D.Kan.1998). It also provides "an almost absolute protection for an attorney's mental impressions and conclusions," which is "not limited to documents and tangible things that are protected under Fed.R.Civ.P. 26(b)(3)." *Hoffman v. United Telecommunications, Inc.,* 117 F.R.D. 436, 439 (D.Kan.1987) (citing *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947)). Unless a question specifically inquires into an attorney's mental impressions, conclusions, opinions, or legal theories, it is inappropriate to raise an objection of work product. The doctrine provides no protection "for facts concerning the creation of work product or facts contained within work product." *RTC v. Dabney,* 73 F.3d 262, 266 (10th Cir.1995); *see also, Hoffman,* 117 F.R.D. at 439. It protects from discovery only the document itself and the "opinion" work-product of the attorney. It

"is intended only to guard against divulging the attorney's strategies and legal impressions." *Dabney,* 73 F.3d at 266. The Miller Group Defendants have shown no inquiry touching upon the mental impressions, conclusions, opinions, or legal theories of their counsel. They have shown no impermissible inquiry as to the content of any document. They would have the court expand the doctrine to cover all discussions between co-defendants with regard to this litigation. The court declines to do so.

■■■■ Defense counsel has engaged in sanctionable misconduct by directing Bruce to not answer questions upon deposition on the basis of the work-product doctrine or attorney-client privilege. Although a party may assert the attorney-client privilege or work-product doctrine against deposition questioning, improperly asserting them may result in sanctions, pursuant to 28 U.S.C. § 1927 or the inherent power of the court to sanction. *See RTC v. Dabney,* 73 F.3d 262, 266–67 (10th Cir.1995). Defendants have provided no log or explanation to show any justification for the instruction not to answer the questions.

## VI. Sanctions

The Miller Group Defendants and their attorneys have engaged in sanctionable misconduct. The defendants have failed to comply with specific orders of this court. Miller Group and 21st Century failed to properly prepare their representative for deposition. Defendant Bruce, as that representative, took insufficient steps to prepare himself for deposition. He also testified falsely regarding the whereabouts of Mr. Metcalfe or improperly verified interrogatories seeking his location. Defense counsel have participated in the discovery abuses and improperly directed Bruce to not answer questions upon deposition.

Plaintiff seeks sanctions pursuant to 28 U.S.C. § 1927 and Fed.R.Civ.P. 26(g) and 37(b) and (d). Rule 26(g)(3) governs sanctions for making a certification in violation of Rule 26(g) without substantial justification. Rule 37(b) governs sanctions for failure to comply with an order of the court. Rule 37(d) governs sanctions for the failure of

parties to attend their own depositions. Section 1927 of Title 28 of the United States Code provides that "[a]ny attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

■■■■ The court first considers the various provisions for sanctions under the Federal Rules of Civil Procedure. The Federal Rules give the court "ample tools to deal with a recalcitrant litigant." *Jones v. Thompson,* 996 F.2d 261, 264 (10th Cir.1993). Whether or not to impose sanctions addresses the discretion of the court. *See National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 642, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976). "In considering the imposition of sanctions, the court must consider on a case-by-case basis whether a party's failure was substantially justified or whether other circumstances make the imposition of sanctions inappropriate." *United States v. A & P Arora, Ltd.,* No. Civ.A. 92–2185–KHV, 1993 WL 461914, at *2 (D.Kan. Oct. 29, 1993), *aff'd,* 46 F.3d 1152, 1995 WL 18276 (10th Cir.1995); *see also,* D.Kan.Rule 11.1(c).

■■■■ The court must also address alleged violations of Fed.R.Civ.P. 26(g)(3). It provides that, if the court finds a certification made in violation of Rule 26(g), it "shall impose ... an appropriate sanction, which may include an order to pay the amount of the reasonable expenses incurred because of the violation." Fed.R.Civ.P. 26(g)(2) has some applicability to the issues before the court. It provides:

Every discovery request, response, or objection made by a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name, whose address shall be stated. An unrepresented party shall sign the request, response, or objection and state the party's address. The signature of the attorney or party constitutes a certification that to the best of the signer's knowledge, information, and belief, formed after a rea-

sonable inquiry, the request, response, or objection is:

(A) consistent with these rules and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law;

(B) not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; and

(C) not unreasonable or unduly burdensome or expensive, given the needs of the case, the discovery already had in the case, the amount in controversy, and the importance of the issues at stake in the litigation.

If a request, response, or objection is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the party making the request, response, or objection, and a party shall not be obligated to take any action with respect to it until it is signed. Rule 26(g)(2) is limited. It applies only to written discovery requests, responses, or objections. The Miller Group Defendants and their attorneys have submitted written responses and objections to discovery, which violate Rule 26(g)(2). They have improperly relied upon Fed.R.Civ.P. 33(d) and deposition testimony in answering interrogatories. They also may have improperly supplemented requests for production by stating, "No further documents to be produced." Their original responses indicate that such documents do exist.

The court also considers alleged violations of Fed.R.Civ.P. 37(b) and (d). The Miller Group Defendants have engaged in misconduct sanctionable under Rule 37(b)(2) and (d). Plaintiff seeks sanctions to include default judgment against the Miller Group Defendants. Rule 37(b)(2) provides a variety of sanctions for disobeying an order of the court, including default judgment. By reference to Rule 37(b)(2), Rule 37(d) provides for many of the same sanctions for failing to appear for deposition. A failure to properly prepare a Rule 30(b)(6) representative to testify is commensurate with a failure to appear. *United States v. Taylor,* 166 F.R.D. 356, 363 (M.D.N.C.), *aff'd,* 166 F.R.D. 367 (1996).

▮▮▮▮ "In determining the appropriate sanction to be imposed, the court must consider the purposes to be served by the imposition of sanctions." *RTC v. Williams,* 162 F.R.D. 654, 660 (D.Kan.1995). Such purposes include "(1) deterring future litigation abuse, (2) punishing present litigation abuse, (3) compensating victims of litigation abuse, and (4) streamlining court dockets and facilitating case management." *Id.* "Sanctions under Rule 37 are intended to ensure that a party does not benefit from its failure to comply, and to deter those who might be tempted to such conduct in the absence of such a deterrent." *Starbrite Waterproofing Co. v. Aim Constr. & Contracting Corp.,* 164 F.R.D. 378, 381 (S.D.N.Y.1996) (citations and internal quotations omitted). The court should diligently apply sanctions under Rule 37 both to penalize those who have engaged in sanctionable misconduct and to deter those who might be tempted to such conduct in the absence of such a deterrent. *Olcott v. Delaware Flood Co.,* 76 F.3d 1538, 1555 (10th Cir.1996). "The primary goal of sanctions is to deter misconduct." *Williams,* 162 F.R.D. at 660. The sanction to be imposed should be the least severe of those available, which appears adequate to deter and punish the wrongdoer. *See White v. GMC,* 908 F.2d 675, 685 (10th Cir.1990).

▮▮▮▮ Due process mandates that the court refrain from imposing harsh sanctions, such as dismissal or its equivalence, for a discovery violation, except when the violation is "predicated upon 'willfulness, bad faith, or [some] fault of petitioner' rather than inability to comply." *Archibeque v. Atchison, Topeka & Santa Fe Rwy.,* 70 F.3d 1172, 1174 (10th Cir.1995) (quoting *National Hockey League,* 427 U.S. at 640, 96 S.Ct. 2778). "Willful failure is 'any intentional failure' and no wrongful intent need be shown." *Kiely v. Shores Group, Inc.,* 160 F.R.D. 159, 160 (D.Kan.1995) (quoting *Sheftelman v. Standard Metals Corp. (In re Standard Metals Corp.),* 817 F.2d 625, 628–29 (10th Cir.1987)).

▮▮▮ "To validly dismiss an action under Rule 37(b)(2)(C) of the Federal Rules of Civil Procedure the court must look at five factors to determine if good cause exists." *Wither-*

spoon v. Roadway Express, Inc., 142 F.R.D. 492, 493 (D.Kan.1992). The court should likewise look at the same five factors before entering default judgment as a sanction under Rule 37(b)(2)(C).

These factors include (1) the degree of actual prejudice to the defendant, (2) the amount of interference with the judicial process, (3) the culpability of the litigant, (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance, and (5) the efficacy of lesser sanctions.

Jones v. Thompson, 996 F.2d 261, 264 (10th Cir.1993); see also, Ehrenhaus v. Reynolds, 965 F.2d 916, 921 (10th Cir.1992). "These factors do not constitute a rigid test; rather, they represent criteria for the district court to consider prior to imposing dismissal as a sanction." Ehrenhaus, 965 F.2d at 921; see also, Archibeque, 70 F.3d at 1174. Although the court should ordinarily consider and address all of the above factors before imposing dismissal or its equivalent as a sanction, some factors will take on more importance than others in a particular case. Ehrenhaus, 965 F.2d at 922.

■ Courts should use dismissal of an action with prejudice or its equivalent as "a weapon of last, rather than first, resort." Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir.1994) [quoting Meade v. Grubbs, 841 F.2d 1512, 1520 n. 6 (10th Cir.1988) ]. Such harsh sanctions are usually appropriate only when a lesser sanction does not serve the interests of justice. Gocolay v. New Mex. Fed. Sav. & Loan Ass'n, 968 F.2d 1017, 1021 (10th Cir. 1992). They are "reserved for extreme circumstances." Meade, 841 F.2d at 1520.

■ With regards to the first of the five factors, plaintiff has incurred prejudice by the discovery abuses of the Miller Group Defendants and their attorneys. They have not received from defendants adequate responses to requests for discovery about material facts. Delays caused by failures to cooperate in discovery have added expense of time and attorney's fees. See Witherspoon v. Roadway Express, Inc., 142 F.R.D. 492, 493 (D.Kan.1992) (dealing with increased expenses caused by failure to respond to discovery requests). Delay and mounting attor-

ney's fees can equate to prejudice. See Jones v. Thompson, 996 F.2d 261, 264 (10th Cir.1993). The court has previously recognized, furthermore, that plaintiff would be prejudiced, if the court stayed this action pending resolution of criminal actions against defendants. [See Mem. & Order of Aug. 4, 1998, at 7, doc. 201 (denying a motion to stay in part because "defendants could dissipate their assets and thwart plaintiff's attempts to recover any fraud damages").]

The Miller Group Defendants have caused unnecessary delay and increased expenses. Plaintiff has incurred unnecessary expenses in deposing an inadequately prepared witness in London. The failure to timely identify the whereabouts of Mr. Metcalfe has essentially kept plaintiff from pursuing discovery from him and timely serving summons upon him. Unnecessary delay can obstruct a party's preparation for trial. In this instance it could jeopardize plaintiff's opportunity to recover damages upon any judgment it might obtain against the Miller Group Defendants. Their conduct has created prejudice against plaintiff.

Lesser sanctions may alleviate the prejudice. Due to the harshness of a default judgment and its equivalent, "it is important to look at the efficacy of lesser sanctions." See Witherspoon v. Roadway Express, Inc., 142 F.R.D. 492, 494 (D.Kan.1992). The court has not assessed lesser sanctions against the Miller Group Defendants. Their delays may have jeopardized an opportunity to recover damages. The court does not view that possibility as so likely, however, as to require entry of default judgment. The court believes lesser sanctions more appropriate at this point. In such a case the remaining factors generally lose much of their importance. The court will nevertheless address them.

The second factor concerns interference with the judicial process. The Miller Group Defendants have pursued a strategy of delay or otherwise failed to provide requested discovery. The court views the delays as a deliberate tactic either of defendants or their counsel or both. It views the actions of the Miller Group Defendants as willful, not sim-

ple involuntary noncompliance. Failure to comply with the rules of discovery often makes it impossible for cases "to proceed with any degree of regularity or to be resolved in a 'just, speedy and inexpensive' manner." *See FDIC v. Renda*, 126 F.R.D. 70, 73 (D.Kan.1989), *aff'd sub nom. FDIC v. Daily*, 973 F.2d 1525 (10th Cir.1992). The failure of the Miller Group Defendants to cooperate in discovery has caused delay. Such delays disrupt the judicial process.

The third factor concerns the culpability of the Miller Group Defendants. They have not shown themselves inculpable. Parties against whom harsh sanctions are sought have the burden to convince the court that "they are blameless victims." *See Jones v. Thompson*, 996 F.2d 261, 265 (10th Cir.1993); *Phillips USA, Inc. v. Allflex USA, Inc.*, 77 F.3d 493, 1996 WL 80448, at *4 (10th Cir. 1996) (Table, text on Westlaw). That Miller will not provide information sought through discovery does not exonerate the Miller Group Defendants. They must bear the burden of his recalcitrance. They may not shift that burden to the plaintiff. They and not plaintiff chose to venture with Miller. The fact that Miller has not himself been a named defendant and may not be subject to the jurisdiction of the court affords no help or consolation for defendants in the present dispute. The court does have jurisdiction over defendants Bruce, Herlihy, 21st Century, and the Miller Group. Ian Miller appears to be the Miller Group and thus a member of the joint venture regardless of whatever name(s) he may use to do business. The conduct of one joint venturer thus constitutes the conduct of the other joint venturers as to the subject matter of the venture. If defendants fail to provide requested discovery because of his failure, they and not plaintiff must take the consequences. If he cannot attend a deposition in Kansas for lack of a passport, defendants suffer from that disability, not plaintiff.

As the designated representative for the 21st Century and Miller Group, moreover, defendant Bruce had a duty to prepare himself to testify upon their behalf. The court finds he was inadequately prepared for his deposition. Defendants also failed to divulge the whereabouts of Mr. Metcalfe, notwithstanding the knowledge of Mr. Bruce. He verified answers which indicated no knowledge of the whereabouts of Metcalfe. He later testified that he knew and had known where Mr. Metcalfe could be found. Either the testimony or the verified answers lack veracity.

"The fourth factor concerns notice." *Witherspoon v. Roadway Express, Inc.*, 142 F.R.D. 492, 494 (D.Kan.1992). The court has not admonished the Miller Group Defendants that their failure to comply with the discovery requirements of the Federal Rules of Civil Procedure may occasion entry of default judgment against them. Absence of a specific admonition, however, doe not end the inquiry. *See Archibeque v. Atchison, Topeka & Santa Fe Rwy.*, 70 F.3d 1172, 1175 (10th Cir.1995); *FDIC v. Daily*, 973 F.2d 1525, 1532 (10th Cir.1992). Although such admonition constitutes one factor in determining the appropriate sanction, *see Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir.1992), "[n]othing in *Ehrenhaus* suggests that this Court was absolutely obligated to first warn" defendants that failure to comply "might result in harsh sanctions," *see Williams v. Texaco, Inc.*, 165 B.R. 662, 676 (D.N.M.1994). The Tenth Circuit Court of Appeals has stated that a failure to warn a party "of the possibility of sanctions is of no consequence." *Daily*, 973 F.2d at 1532. Despite no absolute obligation to first warn of such sanctions, the court finds such warning appropriate.

As plaintiff notes, the court did indicate to the Miller Group Defendants that sanctions could follow a failure to provide a representative for deposition consistent with the requirements of Fed.R.Civ.P. 30(b)(6). (Mem. & Order of Aug. 13, 1998, at 5.) They provided a representative who apparently knew little about the subject matter described by the present motion. They also ignored specific directions of the court to produce documents within their legal control and answer interrogatories upon knowledge of their officers and agents and without improper invocation of Fed.R.Civ.P. 33(d). The court views these failures as grounds for sanctions. The court specifically warns the Miller Group Defendants that further violations of discov-

ery requirements or of its orders may result in further sanctions, including default judgment.

■ A substantial monetary sanction appears appropriate. Before determining the amount, the court directs plaintiff to file an affidavit of time and expenses incurred as a result of the sanctionable misconduct. The Miller Group Defendants may then respond to it.

■ Plaintiff also seeks sanctions against defense counsel, pursuant to 28 U.S.C. § 1927. Sanctions are appropriately imposed under § 1927 "for conduct that, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court." *RTC v. Dabney,* 73 F.3d 262, 265 (10th Cir.1995) (quoting *Braley v. Campbell,* 832 F.2d 1504, 1512 (10th Cir. 1987)). The Tenth Circuit Court of Appeals has recognized four situations which warrant sanctions under § 1927:(1) "when an attorney is cavalier or 'bent on misleading the court' "; (2) when an attorney "intentionally acts without a plausible basis"; (3) "when the entire course of the proceedings was unwarranted"; and (4) when discovery is "substantially unjustified and interposed for the improper purposes of harassment, unnecessary delay and to increase the costs of litigation." *Miera v. Dairyland Ins. Co.,* 143 F.3d 1337, 1342 (10th Cir.1998). Due to the penal nature of § 1927 and to ensure that the statute does not dampen an attorney's zealous representation of his or her clients' interests, courts should impose sanctions under the statute "only in instances evidencing a serious and standard disregard for the orderly process of justice." *Id.* (internal quotations omitted).

■ In this instance the court does not find that defense counsel acted cavalierly or intended to mislead it. Nor does it find that the entire course of proceedings was unwarranted or that defense counsel propounded discovery for improper purposes. Defense counsel has, however, intentionally acted without a plausible basis. They directed a deponent not to answer questions upon deposition based upon a faulty and unsupportable view of the work-product doctrine. They improperly invoked Fed.R.Civ.P. 33(d) and deposition testimony in answering interrogatories. The court finds no plausible basis for these actions.

■ "When a court imposes sanctions under 28 U.S.C. § 1927 ... it must sufficiently express the basis for the sanctions imposed to identify the excess costs reasonably incurred by the party to whom they will be due." *RTC v. Dabney,* 73 F.3d 262, 267 (10th Cir.1995) (quoting *Braley,* 832 F.2d at 1513). To comply with this direction, the court directs plaintiff to submit an affidavit identifying the excess costs reasonably incurred by it, due to the misconduct of defense counsel. Plaintiff should keep in mind that " '[e]xcess costs' recoverable under 28 U.S.C. § 1927 include only those enumerated in 28 U.S.C. § 1920, which lists the items that ordinarily may be taxed to a losing party." *Id.*

■ Upon receipt of the affidavits from plaintiff, the court will fashion an appropriate order to resolve the issue of sanctions under Fed.R.Civ.P. 26(g)(2) and 37(b)(2) and (d) and 28 U.S.C. § 1927. The court again warns the Miller Group Defendants that any additional discovery violations may result in harsh sanctions, including default judgment. It also specifically gives notice that on any further motion for sanctions, the court may impose a sanction payable to the court. The court has inherent power to impose such sanction upon appropriate notice. *Dabney,* 73 F.3d at 267.

For the foregoing reasons, the court sustains in part, overrules in part, and defers in part Plaintiff's Motion for Sanctions Against the Miller Group Defendants and Their Counsel By Reason of Bad Faith Discovery Tactics and Failures to Comply with Court Orders (doc. 228). It sustains the motion for sanctions, except as to the request for default judgment. Plaintiff shall submit its affidavits within twenty days of the date of this order. Within twenty days thereafter the Miller Group Defendants may submit any opposing affidavit or memorandum. The court defers entry of sanctions, until it has

received the affidavits of costs and expenses incurred by plaintiff, as set forth herein.

IT IS SO ORDERED.