**RESOLUTION TRUST CORPORATION, Plaintiff,**

**v.**

**Wilson M. WILLIAMS, et al., Defendants.**

**No. 93–2018–GTV.**

United States District Court, D. Kansas.

July 11, 1995.

Lawrence D. Greenbaum, Charles A. Getto, McAnany, Van Cleave & Phillips, P.A., Kansas City, KS, David A. Vorbeck, Philip J. Adams, Jr., Resolution Trust Corp., Overland Park, KS, and T. Daniel Venters, Shawnee, KS, for plaintiff.

John C. Aisenbrey, Stinson, Mag & Fizzell, Kansas City, MO, Terence J. Thum, Bryan Cave, Kansas City, MO, Michael W. Lerner, the Law Office of Mick Lerner, P.A., Overland Park, KS, Michael Thompson, John G. Mazurek, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, MO, Anthony F. Rupp, Shughart, Thomson & Kilroy, Overland Park, KS, Thomas A. Sheehan, Russell S. Jones, Jr., W. James Foland, Jane A. DeJong, Shughart, Thomson & Kilroy, Kansas City, MO, Mark A. Stites, Stinson, Mag & Fizzell, Overland Park, KS, and James L. Eisenbrandt, Bryan Cave, Overland Park, KS, for defendants.

Mark J. Eichholz, Hackler, Hinkle, Martin & Hackler, Chtd., Olathe, KS, for Harry H. Harrison and Harry H. Harrison, Shawnee Mission, KS, pro se.

## MEMORANDUM AND ORDER

NEWMAN, United States Magistrate Judge.

Now before the court is the Third Motion of Defendants Wilson M. Williams and David D. Padgett, Sr. for Sanctions (doc. 280). Plaintiff has filed a response. Defendants have filed a reply.

This is an action against certain officers and directors of Colonial Savings and Loan Association of America, a federally chartered savings and loan. The complaint alleges breach of fiduciary duty, negligence and violation of federal law. The Resolution Trust Corporation (RTC), as receiver of the failed institution, claims damages in excess of $14 million. The court held the scheduling conference pursuant to Fed.R.Civ.P. 16(b) in this case on May 7, 1993. In order to facilitate discovery in this document intensive case, the court entered an order directing the parties to produce to all other parties "all documents reasonably believed to be subject to production under Fed.R.Civ.P. 26(b)(1)" on or before June 30, 1993.[1] RTC is represented in this action by various attorneys in the firm of McAnany, VanCleave & Phillips, P.A. (Outside Counsel). At the scheduling conference,

---

1. The action was filed prior to the effective date of the December 1, 1993, amendments to the Federal Rules of Civil Procedure. The court's order was memorialized in paragraph "b" of the May 14, 1993, Scheduling Order.

the RTC was represented by Lawrence Greenbaum of McAnany, VanCleave & Phillips, P.A. and two RTC staff attorneys. Charles A. Getto, also a member of the firm, is lead trial counsel.

The primary evidence concerning the manner in which a savings and loan association was managed, its condition at the time of the takeover, and the damages allegedly caused to an institution by defendants is generally contained in documents which have been in the continuous custody of an institution prior to the takeover and the government agencies, Office of Thrift Supervision (OTS) and RTC, from and after the takeover of an institution. It is unlikely the defendant officers and directors personally retain copies of the documents necessary to defend the claims of the RTC since such documents are related to the conduct of the business affairs of the institution and are maintained by it in the ordinary course of business. Taking into account the fact that the RTC controlled virtually all the documentary evidence in this case, the court entered its order requiring production of these documents in June of 1993 in order to expedite the discovery process.

Certain documents were timely produced by plaintiff. The documents produced were contained in 113 boxes. Other documents were withheld under a claim that they were irrelevant to any issue in the case. Subsequently, certain of the objections were withdrawn and the documents were also produced. The instant motion involves RTC's failure to produce approximately 116 boxes of documents until May, 1994, or approximately one year after the documents were to have been produced under the court's order. Although discovery was proceeding, the existence of the 116 boxes of documents now in issue was not disclosed and the documents were not produced.

In May of 1994 Getto notified defense counsel, Mick Lerner, of the existence of 116 boxes of documents which had not previously been produced but were possibly relevant to the issues in the case. Getto advised that out of the 116 boxes only 12 contained documents "useful to either side." The twelve boxes were produced on May 12, 1994, along with an index to all 116 boxes which had been prepared by the RTC in July of 1991. Defendants' counsel subsequently requested, and the RTC produced, the remaining 104 boxes on July 22, 1994.

On September 1, 1994, during the deposition of Nancy Jones, one of plaintiff's expert witnesses, defendants discovered that RTC had furnished an index of the documents to Ms. Jones in November of 1991 when she reviewed documents at its offices in Kansas City. Ms. Jones testified that she reviewed the index and selected for review certain documents which were then made available to her.

■ Defendants filed this motion for sanctions requesting an order striking Plaintiff's Second Amended Complaint due to plaintiff's failure to timely produce relevant documents, or in the alternative, for an order granting defendants additional time within which to complete discovery related to the 116 boxes. This is the third motion filed by defendants in a series of motions requesting sanctions due to RTC's failure to produce documents in this case. In the first two motions, the court found the issues moot as the documents there in dispute had previously been produced and denied the requested sanctions under Fed.R.Civ.P. 37 as the rule did not provide for the sanctions requested under the facts presented. The court granted additional time for certain discovery.

Defendants base their claim for sanctions against RTC upon Fed.R.Civ.P. 37(a)(4)(A)[2]

---

**2.** Fed.R.Civ.P. 37(a)(4)(A) provides:

If the motion is granted or if the disclosure or requested discovery is provided after the motion was filed, the court shall, after affording an opportunity to be heard, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing

and 37(b).[3] For the same reasons stated in the March 30, 1995, Memorandum and Order, the imposition of sanctions requested under Fed.R.Civ.P. 37 would be inappropriate. The court has not entered an order under Fed.R.Civ.P. 37(a)(2) requiring production of documents pursuant to a request under Fed.R.Civ.P. 34. Rather, the court entered the order requiring production of certain documents as a part of the Scheduling Order under Fed.R.Civ.P. 16(b), without the necessity of submission of requests for production under Fed.R.Civ.P. 34. The applicable provision for sanctions is Fed. R.Civ.P. 16(f). The court, therefore, considers the award of sanctions under Fed. R.Civ.P. 16(f) which provides:

> If a party or party's attorney fails to obey a scheduling or pretrial order, ... the judge, upon motion or the judge's own initiative, may make such orders with regard thereto as are just, and among others any of the orders provided in Rule 37(b)(2)(B), (C), (D). In lieu of or in addition to any other sanction, the judge shall require the party or the attorney representing the party or both to pay the reasonable expenses incurred because of any noncompliance with this rule, including attorney's fees, unless the judge finds that the noncompliance was substantially justified or that other circumstances make an award of expenses unjust.

The first consideration must be whether RTC complied with the terms of the Scheduling Order by producing the required documents. It is undisputed that RTC did not.

■ The next consideration is whether RTC's noncompliance was inadvertent or excusable or whether there are other circumstances which make imposition of sanctions unjust. Consequently, the court turns to a review of RTC's explanation for its failure to comply with the court's order.

Under the Scheduling Order, RTC was required to make available to defense counsel all documents which were reasonably believed to be subject to production under Fed. R.Civ.P. 26(b)(1). RTC was required to produce all documents relevant to the claims and defenses of any party in the case, whether the documents would themselves be admissible or would be likely to lead to the discovery of admissible evidence. It is now evident that RTC failed to produce all of the documents which it was required to produce under the Scheduling Order. In fact, it produced less than half of those documents which it had previously identified as relevant and made available to its expert witness. In a narrowly drafted response and an equally narrowly crafted affidavit of Charles Getto, RTC attempts to excuse its failure to timely produce the documents arguing that Getto did not know of the existence of the documents in issue, or that all relevant documents had not been produced, until April of 1994. For the purposes of this motion, the court accepts the facts set out in Mr. Getto's affidavit regarding his individual conduct in this matter.

As evidenced by a July 25, 1991, office memorandum of the RTC, an index of the boxes containing documents related to the issues in this case was prepared in July of 1991. While this action was not filed until January of 1993, Outside Counsel was involved no later than the fall of 1991. In

---

party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust.

**3.** Fed.R.Civ.P. 37(b)(2) provides:
    If a party ... fails to obey an order to provide or permit discovery, ... the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
    ....
    (C) An order striking out pleadings or parts thereof, ...

....
    In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

October of 1991, Ms. Jones, the expert witness, issued a statement for her services directed to Getto reflecting work performed as early as September 23, 1991. In November of 1991, the documents in issue, along with the index, were made available to Ms. Jones. The court finds it inconceivable, as claimed by Getto, that lead counsel for RTC had not examined the documents made available for review by RTC's expert witness. It would be even more difficult to conceive that no attorney with McAnany, VanCleave & Phillips reviewed such documents prior to or at the time of their production to the expert witness. There has been no representation that Outside Counsel did not have the index in its possession prior to the filing of the action. There has been no suggestion that Outside Counsel other than Charles Getto, house counsel for RTC actively participating in the case, and nonlegal RTC personnel assisting in the case, were not aware of the existence of the 116 boxes of documents or of the fact that such boxes contained documents relevant to the case. Since the documents were made available to the expert witness, RTC obviously was aware they contained information likely to be relevant to this case.

Upon pronouncement of the court's order at the scheduling conference, RTC was required to review the documents in its possession and make available to defendants all documents which were required to be produced under the order. No explanation has been offered in RTC's response to the motion for its noncompliance with the court's order. No facts have been provided to the court to allow the court to determine whether the RTC made any effort to fully comply with the court's order. Other than a conclusory statement in Getto's affidavit that RTC did not intentionally withhold the documents, there is no explanation for the failure to produce 116 boxes of documents. While there is no evidence that the RTC intentionally withheld the documents, there is also no evidence that it made a good faith effort to comply with the court's order. RTC is not a novice in litigating matters in the federal courts. It has been a regular litigant in this court and other courts throughout the country. It has staff attorneys who participate actively in the preparation of the litigated cases. It is certainly not unfamiliar with the discovery process. RTC was aware of the contents of the documents in the boxes in issue. It had indexed them and produced them to its expert witness for review. When the court ordered production of certain documents it had an obligation to locate, review and produce the documents required by the order.

■ Outside Counsel for RTC also had a duty to determine the existence of documents which were required to be produced under the court's order. Careful inquiry by counsel is mandated in order to determine the existence of discoverable documents and to assure their production. The responsibility for determining the existence of and implementing the production of discoverable documents is not that of the party alone, but also its counsel. While the party has a duty to identify and produce documents known to be required for production during discovery, counsel for the party has a collateral duty. Counsel has an obligation to assure that the client complies with the discovery obligations and court orders and to assist the client in that compliance.

The only explanation for the failure to produce the documents has been that Getto believed that all of the documents, reasonably subject to production had been forwarded to his office by RTC and produced to the defendants. While the response may explain why Getto made the assumptions that he did, such assumptions do not excuse the failure to produce documents by RTC or its Outside Counsel, notwithstanding that Getto was considered lead trial counsel in the case. Getto was not the only attorney actively working on the case. One attorney's lack of awareness of the existence or location of documents is not the issue. It is not a specific attorney's belief or assumptions that is controlling. The affidavit and the responsive memorandum are conspicuously silent on the knowledge of Outside Counsel other than

Getto. It is the collective knowledge of RTC and Outside Counsel that is determinative. For that matter, no explanation has been provided as to the steps Outside Counsel or RTC took to assure that all relevant documents had been produced to defendants. There is no evidence that there was any review by RTC, Getto, or Outside Counsel of the documents produced to confirm that all documents in the possession of RTC required by the court's order to be produced to defendants were actually produced. An assumption on the part of one of the attorneys representing a party to the effect that the client has furnished all discoverable documents and/or that all discoverable documents have been produced is an inadequate basis for a good faith effort at compliance with discovery obligations, and specifically this court's order.

Any review of the index of the documents relevant to the case and comparison of that index to the documents to be produced by RTC or its Outside Counsel would have revealed that the documents produced in May, 1993, were less than one half of the available, relevant documents. Apparently, neither RTC nor its counsel made such a review.

It is noteworthy that during the initial production of documents RTC withheld a large volume of documents arguing that they were not subject to production on the grounds that they related to post-takeover activities. These documents were later produced after RTC changed its position on their discoverability. The significance of this is that RTC took great care to remove from the 113 boxes which it did produce, the documents which it claimed were not subject to production. It did not, however, exercise that same degree of care to assure that it produced all documents to which the defendants were entitled under the court's order.

It is also noteworthy that no explanation has been provided by RTC as to how or why the 116 boxes were finally brought to Mr. Getto's attention. The affidavit of defendant's counsel suggests that it may have been due to a request for the production of the documents by an attorney for another defendant in the case who had acquired a copy of the index through production of documents to him. The court further notes that after Getto became aware that a large quantity of documents had not been produced, he represented to opposing counsel that only 12 boxes out of the total of 116 boxes contained documents "useful to either side" and only those 12 boxes were produced. Getto apparently made this representation after reviewing only the 1991 index rather than the documents themselves. Upon specific request of counsel, the final 104 boxes were produced. Relevant documents were found throughout the 116 boxes.

This is not a case of an inadvertent failure to produce a few obscure documents in a massive production. RTC failed to produce approximately half of the documents known to be relevant to the issues in the case and documents which it had made available to its own expert witness.

RTC argues in defense of its conduct that even when these documents were produced to defendants, they only requested copies of documents comprising less than one box. RTC further argues that only a few of the documents in issue were ultimately listed on defendants' list of proposed exhibits. The number of documents actually photocopied by defendants from these boxes is irrelevant, as is the number of documents designated on defendants' list of exhibits. The argument is specious. The issue is not what defendants extracted from the boxes for copying or designation on their lists of exhibits, but RTC's obligation to produce them in compliance with the court's order.

█ The court has carefully studied the RTC response for any other rational explanation of its failure to produce these documents. Rather than directly address the issue of its failure to produce the documents, RTC chose an approach that would best be described as a savage counter attack. RTC accuses defense counsel of violating Fed. R.Civ.P. 11 and argues that defendants' motion is part of a pattern of abuse of Fed.

R.Civ.P. 11 by defendants in this case. It accuses defense counsel of misrepresenting facts to the court. It attempts to minimize its failure to comply with this court's order. It quibbles with the method of discovery chosen by defendants. It rationalizes that it produced "most of the relevant documents" in compliance with the court's order. The obvious attempt is to divert the court's attention from the action and inaction of RTC and its Outside Counsel.

The production of the documents by RTC was sloppy and reckless. Cases such as this wherein defendants are sued for millions of dollars and are required to incur hundreds of thousands of dollars in defense costs deserve a higher degree of care than was employed by RTC and its Outside Counsel in this case.[4] The responsibility to produce documents to the adverse party during discovery is a part of our usual litigation process employed through the Federal Rules of Civil Procedure. Counsels' duty to assure the production of documents to the adverse party is no less than the duty to prepare their client's case for trial. In the court's view, the responsibility to produce documents is underscored when a governmental agency sues a private citizen, as occurred here, while at the same time holding the primary evidence upon which the case will be tried. Neither RTC nor Outside Counsel exercised the required degree of care in this case.

Turning to the response to the instant motion prepared by counsel and signed by Getto, the court finds the response inadequate, inappropriate and unprofessional. The first three pages of a seven page memorandum accuse the defendants' attorney of various Rule 11 violations and misrepresentations to the court. The style, tone and approach used in the responsive memorandum does not comply with the standards regularly expected of counsel practicing before this court. While counsel are expected to vigorously represent their clients, that representation is not without limits. Attacks upon the integrity of opposing counsel and accusations

of violations of Rule 11, used to divert the court's attention from the real issues to be determined, are clearly outside the permitted limits for advocacy in this court. Counsel are expected to address the issues in dispute. The style should be direct, clear, concise and persuasive.

The court finds that sanctions should be imposed upon RTC, Getto and Outside Counsel for their respective roles in the conduct described herein.

■ In determining the appropriate sanction to be imposed, the court must consider the purposes to be served by the imposition of sanctions. In *White v. General Motors Corporation,* 908 F.2d 675 (10th Cir.1990), the Tenth Circuit Court of Appeals generally outlined such purposes as including (1) deterring future litigation abuse, (2) punishing present litigation abuse, (3) compensating victims of litigation abuse, and (4) streamlining court dockets and facilitating case management. The primary goal of sanctions is to deter misconduct. *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). The sanction imposed should be the least severe sanction adequate to deter and punish the offending party. *White,* 908 F.2d at 684. While *White* involved sanctions imposed under Fed.R.Civ.P. 11, its principles have been applied to the imposition of sanctions under Fed.R.Civ.P. 26 and 37. *Parker v. Housing Authority of Kansas City, Kansas, et al.,* 1990 WL 126816 (D.Kan.1990). The same principles are applicable to the imposition of sanctions under Fed.R.Civ.P. 16(f).

The sanctions requested by the defendants are an order striking the plaintiff's pleadings and an order awarding the defendants their attorney's fees incurred in the filing of this motion. Striking the plaintiff's pleadings would have a similar effect to dismissal of the action. Therefore, the court also reviews the principles enunciated by the Tenth Circuit in considering such requests. In *Ehrenhaus v. Reynolds,* 965 F.2d 916 (10th Cir.1992), the

---

4. This is not to suggest that smaller cases or cases in which no monetary recovery is sought do not require the same degree of care and attention.

court set out the following factors to be considered prior to imposition of the sanction of dismissal; (1) the actual prejudice suffered by the defendant, (2) the amount of interference with the judicial process, (3) the culpability of the litigant, (4) whether the party had been warned of the possible sanction in advance, and (5) the efficacy of lesser sanctions.

Sanctions are imposed in this case to recognize the violation that occurred, to punish for it, and to deter the persons responsible from engaging in similar conduct in the future. Notwithstanding the frustration claimed by defense counsel concerning the manner of production of documents in this case, defendants have failed to show prejudice or that the costs of defending this action have been materially increased as a result of plaintiff's conduct. Certainly discovery has been extended by the late production of documents. An extension of time for discovery arising out therefrom should preclude prejudice. A final pretrial order has not yet been entered in the case. The court finds that no prejudice has accrued to the defendants.

The court has considered the other factors enumerated in *Ehrenhaus*. The court has been unable to determine the full extent of the culpability of the litigant since no explanation has been provided concerning the reasons that the documents were not produced other than as stated. However, staff counsel for RTC were aware of the court's order as they were present in court when the order was made orally and they have participated throughout the litigation. The documents were produced without the intervention of the court, therefore, there was no warning afforded for the conduct in issue. Considering all of the applicable factors the court determines that the sanction of striking the pleadings would be too severe a sanction under the facts presented.

The defendants also request attorney's fees for the time incurred in the filing of this motion. Since compliance with the court's order was not achieved by the filing of this motion, the court determines that awarding attorney's fees is also not the appropriate sanction. Further, the primary focus of sanctions is the deterrence of misconduct. The court does not believe that a small award of attorney's fees related to the filing of the motion is likely to deter future conduct of a similar nature.

Considering the principles enunciated in *White*, the court determines that the appropriate sanction is the public reprimand of the RTC, Getto and McAnany, VanCleave & Phillips, P.A. Such a reprimand is the least severe sanction adequate to deter future misconduct and to punish for the prior misconduct.

The court grants the Third Motion of Defendants Wilson M. Williams and David Padgett, Sr. for Sanctions (doc. 280). The defendants are granted 60 additional days to engage in any discovery arising out of the failure to timely produce documents by the RTC. RTC, Charles A. Getto and McAnany, VanCleave & Phillips, P.A. are reprimanded for their conduct in this matter.

IT IS SO ORDERED.