**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

SUN RIVER ENERGY, INC.,

     Plaintiff,

v.

ERIK S. NELSON; STEVE STEPHENS;
CORAL CAPITAL PARTNERS, INC.,

     Defendants - Appellees.

------------------------------

JAMES E. PENNINGTON; STEPHEN
E. CSAJAGHY,

     Attorneys - Appellants.

No. 14-1321

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:11-CV-00198-MSK-MEH)**
_____

Submitted on the briefs:[*]

Stephen E. Csajaghy, Condit Csajaghy LLC, Denver, Colorado, and James E.
Pennington, Law Offices of James E. Pennington, P.C., Dallas, Texas, for
Attorneys-Appellants.

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument.

M. Gabriel McFarland and Cyd A. Hunt, Evans & McFarland, LLC, Golden, Colorado, for Defendants-Appellees.

_____

Before **KELLY**, **BALDOCK**, and **GORSUCH**, Circuit Judges.

_____

**BALDOCK**, Circuit Judge.

_____

James E. Pennington and Stephen E. Csajaghy, former counsel for plaintiff Sun River Energy, Inc. (Sun River) in the underlying proceedings, appeal from a judgment of the district court sanctioning them, jointly and severally, in the amount of $20,345 for discovery abuse under Fed. R. Civ. P. 37.  They raise several legal, factual, and procedural challenges to the sanction.  Exercising jurisdiction under 28 U.S.C. § 1291,[1] and reviewing the district court's determination for abuse of discretion, *see Olcott v. Del. Flood Co.*, 76 F.3d 1538, 1557 (10th Cir. 1996), we affirm the sanction imposed on Mr. Csajaghy but reverse the sanction imposed on Mr. Pennington.

## I.  BACKGROUND

"[A] party must, without awaiting a discovery request, provide to the other parties . . . any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse

_____

[1] A sanctioned attorney, even one no longer representing a party in the case, may not take an interlocutory appeal.  *See Howard v. Mail-Well Envelope Co.*, 90 F.3d 433, 436-37 (10th Cir. 1996).  "Instead, counsel must await the conclusion of the underlying lawsuit and then appeal under § 1291." *G.J.B. & Assocs., Inc. v. Singleton*, 913 F.2d 824, 829 (10th Cir. 1990).  Here, judgment has been entered on all of the claims and counterclaims asserted in the underlying proceeding.

2

for payments made to satisfy the judgment." Fed. R. Civ. P. 26(a)(1)(A)(iv). Here, pursuant to a scheduling order issued by the magistrate judge that included a report of the parties' discovery conference under Fed. R. Civ. P. 26(f), the initial date agreed for such disclosures was April 6, 2011.[2] It is undisputed that plaintiff Sun River had an insurance policy, entitled "Directors and Officers Liability Insurance Policy including Employment Practices and Securities Claims Coverage" ("D&O Policy"), Aplt. App. at 324, which potentially covered securities-related counterclaims asserted by defendants, thus requiring Sun River to disclose the policy by April 6, 2011, pursuant to the scheduling order. Yet no disclosure of the policy was made until eighteen months later—only after counsel for defendants repeatedly pressed the issue based on other information raising suspicions of an undisclosed policy, and then filed a motion to compel its production. By that time coverage under this "claims made" policy had lapsed.

When the omission came to light, defendants moved for an order sanctioning Sun River under Rule 37(b)(2)(A) by dismissing Sun River's claims against defendants and entering a default judgment for defendants on their counterclaims against Sun River. *See* Rule 37(b)(2)(A)(v) and (vi). The magistrate judge held an evidentiary hearing on the motion, taking testimony from attorneys Pennington and Csajaghy regarding events surrounding their failure to timely disclose the policy.

---

[2] The district court relied on this scheduling order to support its sanctioning authority under Fed. R. Civ. P. 37(b)(2) (authorizing sanction for "Failure to Comply with a Court Order"). The parties do not challenge the use of the scheduling order for this purpose.

At the time of the initial failure to disclose, Mr. Pennington was Sun River's in-house counsel and Mr. Csajaghy was Sun River's attorney of record in the litigation. Mr. Pennington later appeared on Sun River's behalf as well, and Mr. Csajaghy withdrew shortly before disclosure of the policy. The magistrate judge ultimately recommended that the motion for sanctions be granted insofar as it sought a default judgment against Sun River on defendants' counterclaims, but denied insofar as it sought dismissal of Sun River's claims against defendants, which were not affected by the operative nondisclosure.

The magistrate judge noted that "[t]he evidence at the hearing of this matter did not establish intentional misrepresentation by [Sun River's] attorneys," but "did establish that neither attorney ever took a serious look at whether there was applicable insurance." Aplt. App. at 513. Indeed, "Mr. Csajaghy testified that neither he nor Mr. Pennington pulled the [D&O] policy to look at it." *Id.* at 514. Both knew about the policy, but they "simply believed that, because no directors or officers (or any individual at all) w[ere] named in the counterclaim, the policy would not be relevant." *Id.* at 513. The magistrate judge considered counsel's conduct pertinent to Sun River's liability for sanctions, and concluded that

> regardless of the precise *mens rea* of [Sun River's] general and outside counsel in failing to investigate properly and disclose the existence of insurance, *they must be viewed as significantly culpable*, especially when Defendants' attorney's attempts to bring the failure of disclosure to [Sun River's] counsel's attention did not result in a hard look at the availability of insurance but, rather, brought threats [by Mr. Csajaghy] against defense counsel for continuing to seek "nonexistent" insurance information. . . . I cannot help but find that the lack of inquisition from February 2011 [when counsel initially conferred about the insurance

4

disclosure] to October 2012 [when the D&O Policy was finally provided to defendants] *exhibited deliberate indifference to the obligation of providing relevant insurance information under Rule 26.*

*Id.* at 517 (emphasis added).

Sun River filed objections to the magistrate judge's recommendation. The district court addressed those objections at the final pretrial conference held July 16, 2013, which was attended by Mr. Pennington but not Mr. Csajaghy, who had withdrawn by then. The district court agreed with the magistrate judge about counsel's deficient performance with respect to disclosure of the D&O Policy, but concluded that Sun River should not be held responsible in the matter. Instead, the district court decided counsel were culpable for the disclosure violation and should be held personally liable for the attorney fees expended by defendants in pursuing the motion for sanctions. The amount of the sanction was subsequently set at $20,435.

Mr. Csajaghy and Mr. Pennington moved for reconsideration, raising legal, factual, and procedural objections to the sanction: (1) Rule 37(c) does not authorize the imposition of sanctions on counsel; (2) counsel acted with substantial justification, precluding the imposition of sanctions; (3) any sanction should have been imposed on Sun River, Mr. Pennington's employer at the time of the initial nondisclosure, rather than on counsel; and (4) due process precluded the imposition of a sanction on Mr. Csajaghy, who had withdrawn and was not present at the July 16, 2013 pretrial conference when the district court redirected the focus of the requested sanction from Sun River to counsel. In response, defendants argued that the sanction was authorized not only under Rule 37, but under Rule 26(g)(3) and the

5

district court's inherent power as well. They also contended that counsel's deliberate indifference to disclosure duties demonstrated the requisite lack of substantial justification; that sanctioning counsel rather than Sun River for counsel's culpable omissions was appropriate; and that Mr. Csajaghy, who (with Mr. Pennington) had testified at length before the magistrate judge about the circumstances surrounding the nondisclosure, had been afforded sufficient process in the matter despite his absence from the pretrial conference when the district court redirected the focus of the inquiry onto counsel. In reply, Mr. Pennington and Mr. Csajaghy elaborated on their argument that sanctions are not authorized against counsel under Rule 37(c). As for the cited alternative bases for the sanctions, counsel countered that the magistrate judge's unchallenged finding of unintentional "deliberate indifference" did not satisfy the bad-faith standard for sanctions under the court's inherent authority or the requisite mens rea under Rule 26(g)(3).[3]

The district court issued a thorough written decision granting in part and denying in part counsel's motion for reconsideration. Beginning with its legal authority to impose the sanction, the district court noted that Rule 37(b)(2)(C) authorizes a monetary sanction for failure to obey a discovery order and expressly provides that the target of the sanction may be "the disobedient party" or "the

---

[3] The district court did not rely on Rule 26(g)(3) or its inherent authority for the sanction under review. And while defendants invoke inherent authority on appeal as an alternative basis for affirming the Rule 37(c) sanction against Mr. Pennington, they no longer rely on Rule 26(g)(3) for this purpose. Under the circumstances, we do not consider the scope of and standard for a sanction under Rule 26(g)(3).

attorney advising that party" in the litigation.  Because Mr. Csajaghy was Sun River's attorney of record when initial disclosures were required by the magistrate judge's scheduling order, *see* supra note 2, the district court held that Rule 37(b)(2)(C) gave it the authority to sanction Mr. Csajaghy for his role in the violation of the order.

The analysis with respect to Mr. Pennington was different.  The district court noted he was not the attorney of record in the case when the scheduling order was violated and concluded he was not subject to sanctions under Rule 37(b)(2)(C) for that violation.  Mr. Pennington did, however, later appear in the case on Sun River's behalf, and at that point became responsible for timely supplementing its inadequate discovery responses as required by Rule 26(e)—a duty enforceable by monetary sanction under Rule 37(c)(1)(A) without any qualification regarding disobedience of a particular order for discovery.  The district court acknowledged that the primary, introductory paragraph of Rule 37(c)(1) speaks only of sanctioning the noncompliant party (by precluding the party's use of the undisclosed information), but concluded that the alternative sanction of "payment of the reasonable expenses, including attorney's fees, caused by the [discovery] failure" set out in Rule 37(c)(1)(A) included counsel within its ambit.  In so doing, it diverged from the only published circuit authority on the reach of Rule 37(c)(1)(A), which it did not consider persuasive.  *See Grider v. Keystone Health Plan Cent., Inc.*, 580 F.3d 119, 141 (3d Cir. 2009); *Maynard v. Nygren*, 332 F.3d 462, 470 (7th Cir. 2003); *see also Apex*

7

*Oil Co. v. Belcher Co. of N.Y., Inc.*, 855 F.2d 1009, 1014 (2d Cir. 1988) (addressing reach of Rule 37(c) before its 1993 amendment).

Both Rule 37(b)(2)(C) and Rule 37(c)(1) provide an exception from liability for sanctions if the discovery omission was "substantially justified."[4] The district court held this exception did not excuse Mr. Pennington or Mr. Csajaghy, because they were aware of the existence of the D&O Policy, had unimpeded access to it, but never bothered to examine it while repeatedly denying the existence of potential insurance coverage to defendants until it was too late to make a claim on the policy. The district court further explained that "[t]he misconduct was unambiguously that of Mr. Pennington and Mr. Csajaghy, not that of Sun River, and thus, the sanction should be borne by them." Aplt. App. at 887.

Finally, the district court addressed Mr. Csajaghy's due process objection. It acknowledged that he was not present at the pretrial conference when the sanction of default judgment sought by defendants against Sun River was converted into a monetary sanction against counsel, and "[t]hus, it may be fair to say that, when converting the recommended sanction to Mr. Pennington and Mr. Csajaghy personally, the Court deprived Mr. Csajaghy of the opportunity to be heard on the legal aspects of that decision." *Id.* at 888. The district count went on to note, however, that Mr. Csajaghy had since been afforded a meaningful opportunity to be

---

[4] Additional exceptions—when "circumstances make an award of expenses unjust," Rule 37(b)(2)(C), or the nondisclosure "is harmless," Rule 37(c)(1)—are not at issue in this appeal.

heard through the proceedings on the motion for reconsideration, curing any prior omission in that regard—particularly given the earlier opportunity afforded by the magistrate judge to both Mr. Csajaghy and Mr. Pennington to testify regarding the circumstances surrounding their nondisclosure of the D&O Policy.

In light of the foregoing analysis, the district court reaffirmed the sanction against both counsel and reduced it to judgment.

## II.  SANCTION AGAINST ATTORNEY PENNINGTON

The primary issue with respect to Mr. Pennington is whether Rule 37(c)(1) grants authority to impose sanctions on counsel.  Secondarily, we consider whether the recognized authority to sanction counsel under the district court's inherent power may be invoked to justify the sanction against Mr. Pennington under the particular circumstances of this case.  We conclude that neither source of sanctioning authority is applicable.

### A.  Sanctioning Authority under Rule 37(c)(1)

As noted above, the relevant case law from other circuits (*Grider* and *Maynard*) holds that the sanctions authorized under Rule 37(c)(1) relate solely to parties, not counsel.  The district court rejected this case law as unpersuasive and, on the basis of its own textual analysis, concluded that the monetary sanction in Rule 37(c)(1)(A) may properly be imposed on counsel.  While the cited cases could have been more thoroughly reasoned, we concur in their conclusion that the rule does not authorize sanctions against counsel, based on our independent analysis of the text, commentary, context, and history of the rule.

9

Prior to its amendment in 1993, Rule 37(c) dealt with a party's failure to admit the genuineness of a document or the truth of a matter in response to a request for admission, requiring payment of reasonable costs and fees expended by the opposing party in making the necessary proof if the failure to admit was unreasonable and material. The rule specifically referred to the non-admitting party's liability for such expenses, and was understood not to authorize a sanction against counsel. *See, e.g.*, *Apex Oil Co.*, 855 F.2d at 1014. In tandem with the 1993 amendment of Rule 26(a) imposing an affirmative duty on all parties to disclose various items of basic information (including insurance), Rule 37(c) was amended by the addition of Rule 37(c)(1), which precluded a party's use of information that it had failed to disclose, thereby "provid[ing] a self-executing sanction for failure to make a disclosure required by Rule 26(a)."[5] Fed. R. Civ. P. 37 advisory committee's note to 1993 amendments. In addition, Rule 37(c)(1)(A)-(C) provided alternative sanctions in the event the threat of use-preclusion would not effectively deter nondisclosure, such as when "parties . . . might be tempted not to disclose evidence that would be helpful to their opponents [rather than to themselves]." 7 James Wm. Moore et al., Moore's Federal Practice § 37.61 at 37-132.1 (3d ed. 2015). The prior provision dealing with the failure to make reasonable and material admissions was retained as subsection (c)(2).

---

[5] In 2000, Rule 37(c)(1) was amended to include a party's failure to supplement discovery responses as required by Rule 26(e). *See* Fed. R. Civ. P. 37 advisory committee's note to 2000 amendment.

Rule 37(c)(1) now reads as follows:

(c) Failure to Disclose, to Supplement an Earlier Response, or to Admit.

(1) *Failure to Disclose or Supplement.* If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:

>    (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
>
>    (B) may inform the jury of the party's failure; and
>
>    (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Although the introductory paragraph to Rule 37(c) (1) continues to refer only to "the party" in designating the target of its primary sanction disallowing use of undisclosed information, the district court concluded that the alternative monetary sanction set out in Rule 37(c)(1)(A) is not so limited because it does not repeat that restrictive reference to the party as the intended target.[6] The district court further noted that this expansive reading of Rule 37(c)(1)(A) was consistent with the trend, evident in other sections of the rule, toward the extension of sanctions to counsel.

Several convergent considerations lead us to reject the district court's reading of the rule as overbroad. Given the historic application of Rule 37(c) only to parties, an express textual reference signaling a new and significant expansion of its

---

[6] The failure to specifically discuss this post-1993 textual feature was the primary reason the district court considered the *Grider* and *Maynard* cases unpersuasive.

11

operation to include counsel would be expected, yet no such reference appears. Nor is there anything in the advisory committee notes to suggest that such a change was intended. Further, not only the primary sanction of use-exclusion in the introductory paragraph of Rule 37(c)(1), but all of the other alternative sanctions set out under subsection (c)(1)—including the six additional sanctions incorporated from Rule 37(b)(2)(i)-(vi) by reference in Rule 37(c)(1)(C)—expressly or by their nature apply only to the noncompliant party, not to counsel.[7] Again, to distinguish the monetary sanction in Rule 37(c)(1)(A) as the unique sanction applicable to party and counsel alike, an explicit indication of such exceptional treatment would be expected. Finally, as for the asserted trend toward expansion of Rule 37 sanctions to include counsel, which the district court relied on to read Rule 37(c)(1)(A) as one more instance of the trend, consideration of the relevant text actually cuts the other way. In every example of this trend cited by the district court, the provision in question was extended to counsel *by adding a reference explicitly including counsel* within its reach[8]—again, something Rule 37(c)(1)(A) does not do. In sum, we discern nothing in the rule's text, commentary, context, or history indicating that it applies to counsel.

---

[7] By sanctions that "by their nature apply only to the noncompliant party" we refer to sanctions that undercut the party's prospects in the litigation by, for example, informing the jury of its noncompliance, prohibiting it from supporting or opposing particular claims or defenses, deeming adverse facts admitted, striking pleadings, staying or dismissing proceedings, or entering default judgment.

[8] *See* Rule 37(a)(5)(A), (a)(5)(B), (b)(2)(C).

We note this is not some inexplicable gap in the rules unreasonably insulating counsel from personal responsibility in discovery. Counsel are subject to monetary sanctions for unjustified nondisclosures when they certify a discovery response as complete and correct at the time it is made, *see* Fed. R. Civ. P. 26(g)(1), (3), or (as relevant here with respect to Mr. Csajaghy) when they fail to comply with a court order for discovery, *see* Fed. R. Civ. P. 37(b)(2)(C). But defendants do not contend that either of these bases for sanctions applies to Mr. Pennington under the circumstances of this case. They do, however, argue that the sanction levied against him may be upheld on the basis of the district court's inherent power, a point to which we turn next.

## B. Sanctioning Authority under District Court's Inherent Power

Defendants insist we may affirm the sanction against Mr. Pennington on the alternative basis that it was a proper exercise of the district court's inherent power to sanction abuse of the judicial process, citing *Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 267 (10th Cir. 1995). In *Dabney* this court relied on an inherent-power rationale to affirm a sanction against counsel that was not authorized under the statute (28 U.S.C. § 1927) invoked by the district court. But, as later explained in *Hutchinson v. Pfeil*, 208 F.3d 1180, 1186 n.9 (10th Cir. 2000), this course was available only because the standard governing sanctions under the two sources of authority was the same. That is not the case here.

A court's inherent power gives it the authority to impose "a sanction for abuse of the judicial process, or, in other words, for bad faith conduct in litigation."

13

*Farmer v. Banco Popular of N. Am.*, 791 F.3d 1246, 1256 (10th Cir. 2015) (internal quotation marks omitted). The Supreme Court has described the "narrowly defined circumstances [in which] federal courts have inherent power to assess attorney's fees against counsel" as involving actions taken "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991) (internal quotation marks omitted). In contrast, Rule 37(c)(1) requires only the absence of substantial justification—a less stringent standard characterized as "not justified to a high degree, but . . . justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted) (comparing Rule 37's "substantially justified" language to similar provision in Equal Access to Justice Act). "Since Rule 37(c)(1) by its terms does not require a showing of bad faith," courts have not read such a requirement into the rule.[9] *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296 (2d Cir. 2006); *see S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 596 (4th Cir. 2003); *Youn v. Track, Inc.*, 324 F.3d 409, 421 (6th Cir. 2003); *Devaney v. Cont'l Am. Ins. Co.*, 989 F.2d 1154, 1162 (11th Cir. 1993).[10] Here, while the district court found that the failure to disclose the insurance policy was not substantially justified, it did not find

---

[9] There is some authority for requiring bad faith or similar culpability when a sanction amounts to the dismissal of a cause of action, *see, e.g.*, *R & R Sails, Inc. v. Ins. Co. of Pa.*, 673 F.3d 1240, 1247 (9th Cir. 2012), but that is not an issue here.

[10] This court has cited "bad faith or willfulness" as just one of several factors to be weighed in considering use-exclusion under Rule 37(c)(1), explaining that the absence of bad faith is not by itself enough to preclude the sanction. *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 953-54 (10th Cir. 2002).

14

that counsel acted in bad faith, vexatiously, wantonly, or for oppressive reasons.  We therefore cannot uphold the sanction against Mr. Pennington on the basis of the district court's inherent power.  Consequently, the sanction must be reversed.

### III.  SANCTION AGAINST ATTORNEY CSAJAGHY

Because Rule 37(b)(2) expressly provides for the monetary sanction imposed on Mr. Csajaghy, there is no question regarding the district court's legal authority to take that action.  Mr. Csajaghy objects to the sanction on three other grounds:  (1) the sanction was not warranted on the facts; (2) sanctioning counsel was inconsistent with the decision not to sanction Sun River; and (3) the procedure through which he was sanctioned violated due process.  None of these objections has merit.

### A.  Factual Basis for the Sanction

Mr. Csajaghy contends that his conduct was substantially justified and thus did not warrant the sanction, because he assumed Mr. Pennington had reviewed the D&O Policy and it was unusual for a "directors and officers" policy to cover securities claims against a corporation.[11]  The district court concluded that such excuses did not provide a substantial justification for his failure to even look at the policy, which was

---

[11] Mr. Csajaghy also appears to argue—as a threshold mens rea condition on use of the Rule 37(b)(2) sanction distinct from the substantial-justification exception in Rule 37(b)(2)(C)—that he could not be sanctioned, because he did not *knowingly* fail to disclose the policy.  He cites no authority imposing this strict condition on imposition of a Rule 37(b)(2) sanction for failure to comply with a discovery order (the cases he relies on involve other provisions).  Indeed, such an easily negated prerequisite for this sanction would render its express substantial-justification exception largely irrelevant (as the circumstances of this case illustrate).  Following the text of the rule and the case law applying it, as the district court did, we decide this case by reference to substantial justification for counsel's nondisclosure.

readily available, before representing that there was no insurance potentially covering the securities claims against Sun River. We review that conclusion for an abuse of discretion, *Doctor John's v. Wahlen*, 542 F.3d 787, 790 (10th Cir. 2008), which in this context has been described as "an arbitrary, capricious, whimsical, or manifestly unreasonable judgement," *Coletti v. Cudd Pressure Control*, 165 F.3d 767, 777 (10th Cir. 1999) (internal quotation marks omitted). *See generally Mathis v. Huff & Puff Trucking, Inc.*, 787 F.3d 1297, 1309 (10th Cir. 2015) (adding to the above specification of an abuse of discretion "a clear error of judgment" and "exceed[ing] the bounds of permissible choice").

Mr. Csajaghy's asserted belief that Mr. Pennington had reviewed the D&O Policy was nothing more than an assumption—he never asked Mr. Pennington to review it or whether Mr. Pennington had reviewed it on his own initiative. Had Mr. Csajaghy inquired and been assured by Mr. Pennington that he had reviewed the policy and found no basis for coverage, Mr. Csajaghy *might* have been able to establish a substantial justification for not disclosing the policy to defendants. We only say "might," however, because as attorney of record Mr. Csajaghy bore the responsibility under the rules for ensuring that the insurance disclosure was correct and complete. Whether that critical responsibility could properly, or at least excusably, be shifted onto an in-house attorney not likewise accountable to the court and opposing parties (an in-house attorney, we note, who admitted that he lacked experience with both directors and officers policies and policies involving securities

16

claims[12]) is a point on which we need not opine. *But see BankAtlantic v. Blythe*

*Eastman Paine Webber, Inc.*, 12 F.3d 1045, 1050 (11th Cir. 1994) (holding litigation

counsel's reliance on representations of in-house counsel insufficient to establish

substantial justification for failure to produce discoverable materials from client's

files to which litigation counsel had full access).  All we need hold here—and we

confidently do so—is that the district court did not abuse its discretion in concluding

that Mr. Csajaghy's unfounded assumption about Mr. Pennington's review of the

D&O Policy was insufficient to establish a substantial justification for his failure to

disclose the policy.  "[T]rial counsel must exercise some degree of oversight to

ensure that [a client's employees, including in-house counsel] are acting competently,

diligently and ethically in order to fulfill their responsibility to the Court [with

respect to discovery]." *Bratka v. Anheuser-Busch Co., Inc.*, 164 F.R.D. 448, 461

(S.D. Ohio 1995).  "Counsel has an obligation to assure that the client complies with

discovery obligations and court orders" and, thus, "[*c*]*areful inquiry by counsel* is

mandated in order to determine the existence of discoverable documents and to

assure their production." *Resolution Trust Corp. v. Williams*, 162 F.R.D. 654, 658

(D. Kan. 1995) (emphasis added).  *See generally* Fed. R. Civ. P. 26(g)(1)(A) (by

signing disclosures required under Rule 26(a), counsel certifies that "to the best of

---

[12] Mr. Pennington testified that he could not remember a single instance when he had actually looked at such a policy and that, other than being aware that D&O referred to directors and officers, he did not know what was meant by such a policy. *See* Aplt. App. at 647-48.  He also testified that he had never had any experience with a securities case in which insurance was involved. *Id.* at 647.

[his] knowledge, information, and belief *formed after a reasonable inquiry*," a disclosure "is complete and correct as of the time it is made" (emphasis added)). Mr. Csajaghy cannot rely on his practical abdication of that very duty of oversight and inquiry as a substantial justification for the failure to make the disclosure required by Rule 26(a)(1)(A)(iv).

Mr. Csajaghy's second excuse is even less persuasive. Basically, he contends counsel need not bother to review the actual terms of an insurance policy (terms, we note, that were not buried in the fine print of some subsidiary provision, but included in the very title of the policy) before denying the existence of potential coverage, so long as he believes the existence of coverage would be very unlikely or unusual. Just plainly framing this contention betrays its infirmity. As this case illustrates, timely awareness of a party's insurance coverage can be crucial to opposing parties, but the latter ordinarily do not have access to the operative policies to confirm for themselves whether there is potential coverage. Rule 26(a)(1)(A)(iv) therefore imposes an obligation to disclose to opposing parties "any insurance agreement under which an insurance business *may be* liable" with respect to claims asserted in the case. (Emphasis added). This obligation inherently includes an exercise of legal judgment regarding the possible availability of coverage under the specific terms of any insurance policies held by a party. That critical legal judgment was never exercised by Mr. Csajaghy—and his resultant representation that Sun River had no insurance to disclose effectively precluded the timely exercise of such legal judgment by opposing counsel as well. The district court did not abuse its discretion in holding

18

that this glaring and prejudicial omission was not substantially justified by Mr. Csajaghy's intuition that the policy would not, upon actual review, be found to apply to defendants' securities claims against Sun River.

**B. Sanctioning Counsel While Not Sanctioning Sun River**

The argument here, such as it is, runs as follows: it is inconsistent to hold that Sun River is not liable for the disclosure violation while at the same time holding that Mr. Pennington, Sun River's employee (as in-house counsel), is liable, because Sun River should be subject to vicarious liability for Mr. Pennington's conduct as his principal. The irony of this position is palpable: the district court decided not to hold Sun River liable *because counsel bore the blame for the nondisclosure and hence should pay the sanction*, and now counsel invoke that decision as the reason why they should *not* be sanctioned. Irony aside, the contention is meritless.

To begin with, it is advanced in counsel's brief almost exclusively with respect to Mr. Pennington (the attorney who had been an employee of Sun River). Although the argument concludes with a perfunctory reference to Mr. Csajaghy as well, counsel do not explain why any inconsistency in treating Sun River and its employee differently with respect to a sanction arising in part out of the employee's conduct should affect the sanction imposed on Mr. Csajaghy as litigation counsel. Indeed, Rule 37(b)(2)(C) expressly provides the option to impose sanctions differentially (or conjunctively) on a party and its counsel, specifying that the "the disobedient party, the attorney advising that party, or both" may be sanctioned. In any event, this vicarious-employer-liability argument and the purported inconsistency it exposes

19

merely suggest that the district court *could* have *also* sanctioned Sun River after finding a sanction warranted against Mr. Pennington. Given that defendants did not seek to impute Mr. Pennington's liability for the monetary sanction to Sun River in this fashion, there was no reason for the court to consider the point (Mr. Pennington and Mr. Csajaghy referred to this basis for imputing liability to Sun River, but they had no standing to seek a discovery sanction against their own client, nor would including Sun River in the sanction have necessarily relieved Mr. Csajaghy of his liability in any event). In sum, we see no overt inconsistency in the district court's imposition of the monetary sanction on counsel but not on Sun River, and if any latent inconsistency were present, it would not provide a basis for reversing the sanction imposed on Mr. Csajaghy.

## C. Due Process

We agree with the district court that, although the initial order imposing the sanction on Mr. Csajaghy was procedurally defective, the subsequent proceedings on counsel's motion for reconsideration cured the deficiency. Advance notice that the court is considering sanctions and an opportunity to respond in opposition is, of course, required. *See Dabney*, 73 F.3d at 268. But "[a]n opportunity to be heard does not require an oral or evidentiary hearing on the issue; the opportunity to fully brief the issue is sufficient to satisfy due process requirements." *Id.* As explained in the background section above, Mr. Csajaghy (and Mr. Pennington) had a full opportunity to brief his various objections to imposition of the monetary sanction in

20

conjunction with the motion for reconsideration.[13]  Indeed, he also had been afforded the occasion to testify and present evidence relating to the circumstances surrounding the nondisclosure underlying the sanction.[14]  "'Cases have consistently held that a violation of procedural due process may be waived or cured.'" *G.J.B. & Assocs., Inc. v. Singleton*, 913 F.2d 824, 832 (10th Cir. 1990) (quoting *United States Postal Serv. v. Nat'l Ass'n of Letter Carriers*, 847 F.2d 775, 778 (11th Cir. 1988)).  In *G.J.B. & Associates* we held that proceedings on a motion to vacate sanctions were "sufficient to cure the defect, if any, in the process [a sanctioned attorney] previously received" in connection with the initial imposition of the sanctions.  *Id.*  The same is true of the motion for reconsideration here.

## IV.  CONCLUSION

For the reasons discussed above, the judgment of the district court is reversed insofar as it sanctioned Mr. Pennington under Rule 37(c)(1) and affirmed insofar as it sanctioned Mr. Csajaghy under Rule 37(b)(2)(C).

---

[13] We note that the district court did not apply a heightened standard of review to the motion for reconsideration, but resolved the issues raised in straightforward plenary fashion.

[14] Mr. Csajaghy does not identify any additional evidence that he would have offered had he been aware from the outset that he might ultimately be the target of the sanction.