NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 11, 2016[*]
Decided March 3, 2016

**Before**

DIANE P. WOOD, *Chief Judge*

RICHARD A. POSNER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 14-2964

| | |
|---|---|
| FIRAS M. AYOUBI, | Appeal from the United States District |
|     *Plaintiff-Appellant*, | Court for the Northern District of Illinois, |
| | Eastern Division. |
|     *v.* | |
| | No. 14 C 50 |
| THOMAS J. DART, et al., | |
|     *Defendants-Appellees*. | Charles R. Norgle, |
| | *Judge*. |

**O R D E R**

Firas Ayoubi, a pretrial detainee at the Cook County Jail, sued several members of the jail's staff under 42 U.S.C. § 1983 for violating the Eighth Amendment by punching him and ignoring his resulting chest pains. Four months after he sued, the judge found that, in asking the court to grant him greater access to the jail's law library, Ayoubi had lied about how often he was allowed in that library. To punish his fraud,

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

the court dismissed the case with prejudice. Ayoubi twice moved for reconsideration, arguing that he had made an innocent mistake. The district court considered his submissions, but disbelieved him and denied his motions. Although the district judge should have asked for Ayoubi's response *before* dismissing the suit, we conclude that the misstep was harmless: The judge entertained the motions to reconsider, the renewed fraud findings were not clearly wrong, and the sanction was reasonable. We therefore affirm the judgment.

Early in the litigation, Ayoubi twice asked the district court to order jail officials to allow him more time in the law library. The judge denied the first request, which sought 10 hours of library time each week. Although he denied the motion, the judge nonetheless "request[ed] that jail officials grant the plaintiff reasonable access to the law library" so he could work on his pending suit. Seven weeks later, Ayoubi filed a second motion for library access. He stated that jail officials had "totally disregarded" the court's request. He was specific: In the seven weeks since the request, the defendants had "worse[ned]" his access, decreasing it from once "every 2 to 3 weeks" to "once every 3 to 4 weeks." This assertion implied that, in the previous seven weeks, he visited the library at most only three times.

The defendants responded that Ayoubi had lied. They submitted an affidavit from a supervisor with the Department of Inmate Services, which authenticated dated logs from the library. The supervisor stated that detainees sign the logs "each time they attend the law library." The logs show that Ayoubi signed into the library on five separate dates in the seven weeks between the court's request for library access and Ayoubi's motion accusing the defendants of "totally" ignoring the request. That rate was slightly *better* than in the five weeks preceding the court's request, when Ayoubi had signed in on three dates. The defendants asked the court to use its inherent power to dismiss the case as a sanction for Ayoubi's fraud in accusing them of "totally disregard[ing]" the court's request.

The district court dismissed the case with prejudice. It found that the library's logs established that Ayoubi had "outright misrepresented" that jail officials had ignored its request to provide reasonable access. As further evidence of Ayoubi's dishonesty in asserting that he lacked adequate access to the law library, the judge also noted that he had filed 10 lawsuits in the preceding 6 months and managed "to churn out a steady stream of filings" in those cases. The judge concluded that dismissal with prejudice was warranted under the court's inherent authority to punish fraud on the

court: Ayoubi needed "a strong message about being punctiliously truthful, ethical, and forthright during the litigation process."

Four days later Ayoubi responded. He had not yet received the notice of the dismissal but was answering the defendants' motion. He asked to "withdraw" the section of his motion asserting that he had used the library only once every three to four weeks, admitting it was an "error." By affidavit Ayoubi stated that he has a "bad memory," "forgot" when the court issued its request, and had no "recall" of three visits, so his error was "unintentional." The court denied Ayoubi's motion to withdraw as moot.

Ayoubi moved twice for reconsideration. He urged the court to consider his affidavit. He also added in an unsworn assertion that he suffers from "ADHD," which he believes leads to "incoherence, impulsivity, memory issues, inattentiveness, forgetfulness, and absentmindedness." The judge considered his submissions but denied the motions, finding again that Ayoubi's error was not "inadvertent."

On appeal Ayoubi challenges the dismissal of his suit. We review    findings of fraud for clear error and the dismissal of the suit as a sanction for fraud for abuse of discretion. *Secrease v. W. & S. Life Ins. Co.*, 800 F.3d 397, 411 (7th Cir. 2015); *Hoskins v. Dart*, 633 F.3d 541, 543 (7th Cir. 2011).

Ayoubi argues on appeal that the judge erred in relying on the library's attendance logs, but he is mistaken. He contends that, because "white-out" was used on the date of one page of the log, the entire log is suspect. But the logs' reliability was established by an uncontradicted affidavit from the prison supervisor. Moreover, Ayoubi forfeited this challenge when he did not raise the "white-out" issue before the district court in his motions to reconsider. *See Wallace v. McGlothan*, 606 F.3d 410, 425 (7th Cir. 2010). And even if he had raised this objection, because Ayoubi could only speculate about the reason for the "white out," the district court would not have abused his discretion in overruling it. *See United States v. Ajayi*, 808 F.3d 1113, 1121 (7th Cir. 2015). Thus the judge permissibly relied on the logs to find that the defendants had not "totally disregarded" the court's request to give Ayoubi library access.

Ayoubi next asserts that he unintentionally miscalculated how often he had gone to the library, but the district court did not clearly err in finding otherwise. When he charged jail officials with decreasing his library access, Ayoubi knew that he had a "bad memory." Despite its relevance, he did not mention that problem to the court, or allow that it might affect his recall of when he went to the library; to the contrary, he

unequivocally accused the defendants of "totally disregard[ing]" the court. Only after the court learned about his admitted "error" did he proclaim to have a "bad memory" and ADHD. A "newly advanced position," crafted only to exonerate litigation misconduct, need not be believed. *See Mulero-Abreu v. P. R. Police Dep't.,* 675 F.3d 88, 93 (1st Cir. 2012). Moreover, as the judge noted, Ayoubi's plethora of court filings in other cases during this time of supposed reduced access further belied his accusation. Thus we conclude that there is ample support for the district court's finding that Ayoubi's misrepresentation was willful.

Ayoubi next argues that the district court committed reversible error by imposing the sanction of dismissal without first granting him notice and a hearing. Before exercising its inherent authority to sanction misconduct, a court must notify the litigant of the specific misdeed that is the basis for possible sanction and allow the litigant an opportunity to respond. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991); *Johnson v. Cherry*, 422 F.3d 540, 549 (7th Cir. 2005); *Larsen v. City of Beloit*, 130 F.3d 1278, 1286–87 (7th Cir. 1997). Ayoubi contends that, before the court imposed sanctions, he should have had an opportunity to address the accusation that he had lied to the court. But the failure to grant advance notice and a hearing, like any other error, can be harmless. FED. R. CIV. P. 61; *see El-Gazawy v. Holder*, 690 F.3d 852, 860 (7th Cir. 2012); *In re Hancock,* 192 F.3d 1083, 1086 (7th Cir. 1999); *Sun River Energy, Inc. v. Nelson*, 800 F.3d 1219, 1230–31 (10th Cir. 2015). And the absence of a pre-dismissal hearing was harmless here because the district court addressed all the arguments that Ayoubi wanted to raise when it entertained his motions to reconsider.

Ayoubi replies that the district court had to give him a *live* hearing. But in the context of a request for sanctions, a live hearing is necessary only if "it could assist the court in its decision." *Kapco Mfg. Co. v. C & O Enters., Inc.*, 886 F.2d 1485, 1495 (7th Cir. 1989); *Sun River Energy,* 800 F.3d at 1230–31; *Pac. Harbor Capital, Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1118 (9th Cir. 2000); *Childs v. State Farm Mut. Auto. Ins. Co.*, 29 F.3d 1018, 1027 (5th Cir. 1994). Although a live hearing can reveal demeanor, "demeanor evidence, such as tone of voice, or gestures or posture, can be an unreliable clue to truthfulness or untruthfulness, and thus distract a trier of fact from the cognitive content of a witness's testimony." *United States v. Pickering*, 794 F.3d 802, 805 (7th Cir. 2015) (citing studies questioning the reliability of demeanor evidence).

A live hearing was not necessary in this case. The "cognitive" content of Ayoubi's testimony was his assertion of a "bad memory." But Ayoubi's credibility problem was his inconsistency. He had accused the defendants with certitude, implying

that his memory about the previous seven weeks was normal. Yet, after the defendants proved the falsity of his accusation, he professed to have overwhelming "memory issues." A live hearing could not have negated this inconsistency or its adverse effect on his credibility. *See Sullivan v. Running Waters Irrigation, Inc.*, 739 F.3d 354, 360 (7th Cir. 2014) (reasoning that remand for live hearing not required when record amply supported court's finding and "it is unlikely that the absence of the credibility observations would disturb" the finding).

Ayoubi's final argument is that the sanction of dismissal with prejudice is too harsh. A court should generally consider lesser sanctions before settling upon dismissal. *See Rivera v. Drake,* 767 F.3d 685, 686–87 (7th Cir. 2014); *Hoskins,* 633 F.3d at 543–44; *Oliver v. Gramley*, 200 F.3d 465, 466 (7th Cir. 1999). But we have held that a dismissal with prejudice is an appropriate sanction for lying to the court in order to receive a benefit from it, because no one needs to be warned not to lie to the judiciary. *See Mathis v. N. Y. Life Ins. Co.,* 133 F.3d 546, 547 (7th Cir. 1998); *see also Jackson v. Murphy*, 468 Fed. Appx. 616, 620 (7th Cir. 2012). We have approved that sanction when a litigant has lied to receive the benefit of proceeding in forma pauperis, observing that fines would be an ineffective sanction against an indigent plaintiff. *See Hoskins*, 633 F.3d at 543–44 (upholding dismissal with prejudice as sanction for litigant who lied about litigation history on complaint); *Thomas v. Gen. Motors Acceptance Corp.,* 288 F.3d 305, 308 (7th Cir. 2002) (upholding dismissal with prejudice as sanction for litigant who lied about income on IFP application). Given that Abouyi too is indigent, the court did not abuse its discretion in dismissing his suit with prejudice as a sanction for his lie in seeking court-ordered library access.

We have considered Ayoubi's remaining arguments, and none has merit.

AFFIRMED.